UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LANSUPPE FEEDER, LLC,

                 Plaintiff,

    vs.

WELLS FARGO BANK, NATIONAL
ASSOCIATION, as Trustee for Soloso CDO
2005-1 Ltd.,

                 Defendant,

    and

SOLOSO CDO 2005-1 LTD.,

                 Nominal Defendant.

Case No. 1:15-cv-07034 (LTS)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
MADE BY ORDER TO SHOW CAUSE**

Jonathan E. Pickhardt
Andrew S. Corkhill
Blair A. Adams
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Plaintiff*
*Lansuppe Feeder, LLC*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................................... 1

STATEMENT OF UNDISPUTED FACTS ..................................................................................... 3

    A.    The Relevant Indenture Provisions ................................................................................ 3

    B.    The Failure to Pay Event of Default and the Resulting Directions to Accelerate and Liquidate ......................................................................................................................... 5

    C.    The Objections Raised by Junior Noteholders ............................................................... 6

    D.    Lansuppe's Waiver of the Alleged 2005 Event of Default ............................................. 6

ARGUMENT ................................................................................................................................... 7

I.    The Plain Terms of the Indenture Permit the Requisite Noteholders to Direct the Liquidation of the Trust Estate ................................................................................................................. 8

II.    The Alleged 2005 Event of Default Does Not Negate the Right of the Requisite Noteholders to Liquidate the Trust Estate ............................................................................. 9

III.    The Alleged 2005 Event of Default Has Been Waived, Mooting Any Impact It Might Have on Lansuppe's Right to Liquidate ........................................................................... 11

CONCLUSION ............................................................................................................................. 12

## **<u>TABLE OF AUTHORITIES</u>**

**<u>Page</u>**

### **<u>Cases</u>**

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)................................................................................................7

*Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co., N.A.,*
 773 F.3d 110 (2d Cir. 2014)...................................................................................7

*Gorman v. Consol. Edison Corp.,*
 488 F.3d 586 (2d Cir. 2007)...................................................................................8

*Mastrovincenzo v. New York,*
 435 F.3d 78 (2d Cir. 2006)................................................................................8, 10

*Portside Growth & Opportunity Fund v. Gigabeam Corp.,*
 557 F. Supp. 2d 427 (S.D.N.Y. 2008).....................................................................10

*Samba Enters., LLC v. iMesh, Inc.,*
 No. 06 Civ. 7660(DLC), 2009 WL 705537 (S.D.N.Y. Mar. 19, 2009)..................8, 10

*Sharon Steel Corp. v. Chase Manhattan Bank, N.A.,*
 691 F.2d 1039 (2d Cir. 1982).................................................................................7

*Sledge v. Kooi,*
 564 F.3d 105(2d Cir. 2009).....................................................................................7

*Rojas v. Roman Catholic Diocese of Rochester,*
660 F.3d 98 (2d Cir. 2011).....................................................................................7

### **<u>Statutes</u>**

FED. R. CIV. P. 56 .....................................................................................................7

### **<u>Secondary Sources</u>**

BLACK'S LAW DICTIONARY (10th ed. 2009) ...........................................................10

Plaintiff Lansuppe Feeder, LLC ("Lansuppe") respectfully submits this memorandum of law in support of its Motion for Summary Judgment made by Order to Show Cause, dated September 11, 2015, in the above-captioned action against Nominal Defendant Soloso CDO 2005-1 Ltd. ("Soloso," the "Soloso CDO," or the "Issuer") and Defendant Wells Fargo Bank, National Association ("Wells Fargo" or the "Trustee").

## PRELIMINARY STATEMENT

This action stems from a dispute concerning the Trustee's duty to comply with a direction from Plaintiff Lansuppe to liquidate certain trust assets—referred to as the "Trust Estate"— owned by Soloso.[1]  Lansuppe moves for summary judgment by order to show cause because the undisputed facts present at the outset of this litigation are sufficient to resolve all issues before this Court and because it is important to resolve this dispute in an expeditious manner to avoid irreparable damage to Lansuppe and other similarly situated Soloso Noteholders.

The Indenture that governs the operation of the Soloso CDO sets forth several "Events of Default" and provides specific contractual remedies in the event they occur.  The Indenture clearly provides that, following an Event of Default triggered by a failure to pay any amounts due to specified Noteholders (a "Failure to Pay Event of Default"),  the Trustee may declare the Aggregate Principal Amount of the Notes to be immediately due and payable, a process referred to as "accelerating" the Notes.  The Indenture clearly provides that, if the Notes have been accelerated as a result of a Failure to Pay Event of Default, the Requisite Noteholders may direct the Trustee to liquidate the Trust Estate.

---

[1]   Capitalized terms used but not defined herein shall have the meaning set forth in the Indenture, dated as of August 24, 2005, among Soloso, as Issuer, Soloso CDO 2005-1 Corp., as Co-Issuer, and Wells Fargo, as Trustee and Securities Intermediary (the "Indenture").  A true and correct copy of the Indenture is attached as Exhibit A to the Declaration of a Representative of Lansuppe Feeder, LLC, dated September 11, 2015.

The Soloso CDO experienced a Failure to Pay Event of Default in April 2013.  As a result of this Event of Default, the Trustee declared the Notes immediately due and payable in June 2013.  Following acceleration, Lansuppe—in its capacity as the Requisite Noteholders— directed the Trustee to liquidate the Trust Estate on July 31, 2015.

Certain junior Noteholders have taken the position that the Requisite Noteholders do not have the authority to direct a liquidation, because of the alleged occurrence of a prior Event of Default in 2005 (the "Alleged 2005 Event of Default").  According to the junior Noteholders, any liquidation of the Trust Estate following the occurrence of the Alleged 2005 Event of Default requires the approval of 100% of Soloso's Noteholders.  As a result of the position taken by the junior Noteholders, the Trustee wishes to receive a binding judicial interpretation of its obligations under the Indenture before proceeding with the liquidation of the Trust Estate.

Even drawing all reasonable inferences against Lansuppe, summary judgment is nevertheless appropriate on the basis of the undisputed facts presently before the Court.  As an initial matter, the plain terms of the Indenture make clear that the Requisite Noteholders' ability to direct the liquidation of the Trust Estate following an acceleration resulting from a Failure to Pay Event of Default is in no way impaired by the existence of some other prior Event of Default.  In addition to there being no textual support for such an interpretation, it would be both nonsensical and commercially unreasonable for senior Noteholders' liquidation rights—which are intended to mitigate risks associated with the senior Notes—to be diminished by the occurrence of *additional* Events of Default.

Finally, even if the occurrence of the Alleged 2005 Event of Default could have given rise to a heightened approval requirement for *any* future liquidation based on *any* future Event of Default—which it could not—summary judgment would still be appropriate, because there is no

dispute that the Alleged 2005 Event of Default "and its consequences" have been waived by the Requisite Noteholders, as they are permitted to do under the Indenture.  Accordingly, even if the position taken by the junior Noteholders was correct—which it is not—their argument nevertheless fails, because the prior Event of Default upon which they rely has been waived.

Based on the foregoing, Lansuppe is entitled to summary judgment: (a) construing the Indenture to authorize the Requisite Noteholders to direct the liquidation of the Trust Estate in the case of an acceleration resulting from a Failure to Pay Event of Default, regardless of whether some other Event of Default has previously occurred; (b) declaring that the Trustee is required to comply with the direction of the Requisite Noteholders to liquidate the Trust Estate; and (c) instructing the Trustee to administer the liquidation of the Trust Estate as directed by the Requisite Noteholders.

## STATEMENT OF UNDISPUTED FACTS

### A.    The Relevant Indenture Provisions

The rights and obligations of the Issuer are set forth in the Indenture.  Certain failures by the Issuer to comply with its obligations under the Indenture constitute Events of Default.  These are enumerated in Section 5.1 of the Indenture and include an Event of Default arising from a "default in the payment of the Periodic Interest Amount due on . . . any Class A-1 Notes" (previously defined as a "Failure to Pay Event of Default").  (Indenture § 5.1(a)(iii)(A).)  Section 5.1 also specifies that an Event of Default occurs if "either of the Co-Issuers or the Trust Estate becomes required to register as an 'investment company' under the Investment Company Act." (Indenture § 5.1(e).)

The occurrence of an Event of Default triggers certain Noteholder rights, including the right of certain senior Noteholders to accelerate the maturity of the Notes.  Specifically, Section 5.2(a) of the Indenture provides that "[i]f an Event of Default . . . with respect to the Notes

3

occurs and is continuing, the Trustee . . . shall, at the direction of the Requisite Noteholders,
declare the Aggregate Principal Amount of the Notes to be immediately due and payable, by
notice in writing to the Issuer." The term "Requisite Noteholders" is defined under the Indenture
as the "Holders of at least 66-2/3% of the Aggregate Principal Amount of the Outstanding Class
A-1 Notes, voting as a single class . . . ." (Indenture § 1.1, at 25.)

Acceleration of the Notes, in turn, triggers certain remedial rights of the Trustee and the
Noteholders against the Issuer, which are enumerated in Section 5.4 of the Indenture, entitled
"Remedies." These include the right of the Requisite Noteholders to direct the Trustee to
liquidate the Trust Estate. (Indenture § 5.4(a)(iv) ("If the Notes have been declared due and
payable and such declaration and its consequences have not been rescinded or annulled . . . the
Trustee . . . shall, upon direction by the Requisite Noteholders, . . . exercise any remedies of a
secured party under the UCC including the sale or liquidation of the Trust Estate . . . .").)

The right of the Requisite Noteholders to direct a liquidation of the Trust Estate is
qualified by a proviso at the end of Section 5.4(a), which sets forth two different approval
requirements for liquidation of the Trust Estate, depending on the nature of the Event of Default
that caused the Notes to be accelerated:

1. "[I]n the case of an acceleration resulting from [a Failure to Pay] Event of Default set
   forth in Section 5.1(a)," the Trustee is permitted to liquidate if "the *Requisite
   Noteholders have so directed*." (Indenture § 5.4(a), part (x) (emphasis added).)

2. In the case of an acceleration resulting from "any other Event of Default," the Trustee
   is permitted to liquidate only if "*100% of the Noteholders have so directed*."
   (Indenture § 5.4(a), part (y) (emphasis added).)

In addition to having the power to direct certain remedial actions following an Event of
Default, the Requisite Noteholders also have the right to waive an Event of Default and its
consequences. Specifically, Section 5.15 of the Indenture, titled "Waiver of Past Defaults,"
provides:

4

> Prior to the time a judgment of decree for payment of money due has been obtained by the Trustee, the Requisite Noteholders may on behalf of the Holders of all the Notes waive any past Default and its consequences . . . .  In the case of any such waiver, the Issuer, the Trustee and the Holders of the Notes shall be restored to their former positions and rights hereunder, respectively . . . .  Upon such waiver, such Default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been cured, for every purpose of this Indenture . . . ."

(Indenture § 5.15.)

### B.   The Failure to Pay Event of Default and the Resulting Directions to Accelerate and Liquidate

On April 15, 2013, Soloso defaulted in the payment of the Periodic Interest Amount due to Class A-1 Noteholders, which, after continuing for a period of four Business Days, resulted in an Event of Default under Section 5.1(a)(iii)(A) of the Indenture.  (SOMF ¶ 4.)[2]  The Trustee informed Noteholders of this Event of Default by letter dated April 24, 2013.  (*Id.*)

On June 7, 2013, while the Event of Default under Section 5.1(a)(iii)(A) was continuing, the Trustee declared the Aggregate Principal Amount of the Notes immediately due and payable as a result of such Event of Default pursuant to Section 5.2(a) of the Indenture.  (SOMF ¶ 5.)

On July 31, 2015, Lansuppe directed the Trustee to liquidate the Trust Estate pursuant to Section 5.4(iv) of the Indenture.  (SOMF ¶ 6.)  Lansuppe is the beneficial owner of 66.89% of the outstanding principal balance of the Class A-1 Notes, making it the Requisite Noteholders, as that term is defined in the Indenture.  (SOMF ¶ 2-3.)  The Trustee informed the Noteholders that it would liquidate the Trust Estate at the direction of the Requisite Noteholders by letter dated August 11, 2015.  (SOMF ¶ 6.)

---

[2]   Plaintiff's Rule 56.1 Statement of Material Facts, dated September 11, 2015, is cited herein as "SOMF."

### C.      The Objections Raised by Junior Noteholders

Certain junior Noteholders (the "Disputing Noteholders") have taken the position that the Trustee is not permitted to liquidate the Trust Estate at the direction of the Requisite Noteholders.  (SOMF ¶ 7.)  The Disputing Noteholders have filed an action (the "Mississippi Action") against the Trustee in the Federal District Court for the Northern District of Mississippi, captioned *Oxford University Bank et al. v. Wells Fargo Bank, National Association, as Trustee for Soloso CDO 2005-1, Ltd.* (Case No. 3:15-cv-00145).  (SOMF ¶ 8.)  Lansuppe is not a party to the Mississippi Action.  (SOMF ¶ 8.)

The Disputing Noteholders have alleged that certain Notes issued by Soloso were sold in 2005 to a purchaser, Bank of Morton, that was not a "Qualified Purchaser" within the meaning of Section 3(c)(7) of the Investment Company Act of 1940.  (SOMF ¶ 9.)  As a result of this sale, the Disputing Noteholders have alleged that the Co-Issuers or the Trust Estate were required to register as an "investment company" under the Investment Company Act, which gave rise to an Event of Default under Section 5.1(e) of the Indenture back in 2005 (the "Alleged 2005 Event of Default").  (SOMF ¶ 10.)  They have further alleged that because of the occurrence of the Alleged 2005 Event of Default, any liquidation of the Trust Estate must be directed by 100% of the Noteholders.  (SOMF ¶ 11.)

The Trustee has informed Lansuppe that in light of the position taken by the Disputing Noteholders, the Trustee wishes to receive a binding judicial determination of its obligations under the Indenture before proceeding with the liquidation as directed by the Requisite Noteholders.  (SOMF ¶ 12.)

### D.      Lansuppe's Waiver of the Alleged 2005 Event of Default

Lansuppe does not concede that the Alleged 2005 Event of Default occurred.  (SOMF ¶ 13.)  Nevertheless, on September 7, 2015, Lansuppe exercised its right under Section 5.15 of the

Indenture to waive the Alleged 2005 Event of Default and its consequences, to the extent such an Event of Default did occur.  (SOMF ¶ 14.)

## ARGUMENT

A movant for summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact is considered material if "it 'might affect the outcome of the suit under the governing law.'" *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  An issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248).  Once the movant demonstrates the absence of any genuine issue of material fact, the burden shifts to the opponent to "designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation mark omitted).  "Summary judgment is warranted when, after construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact."  *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009).

"Interpretation of indenture provisions is a matter of basic contract law."  *Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*, 691 F.2d 1039, 1049 (2d Cir. 1982).  When interpreting a contract under New York law, the court's "primary objective . . . is to give effect to the intent of the parties as revealed by the language of their agreement."[3]  *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co., N.A.*, 773 F.3d 110, 114 (2d Cir. 2014) (alteration in original) (quoting

---

[3]  The Indenture is governed by New York law.  *See* Indenture § 13.10(a) ("This Indenture … shall be construed in accordance with and governed by the laws of the State of New York applicable to agreements made and to be performed therein").

*Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 157 (2d Cir. 2000)).

"Unless otherwise indicated, words should be given the meanings ordinarily ascribed to them and absurd results should be avoided." *Mastrovincenzo v. New York*, 435 F.3d 78, 104 (2d Cir. 2006) (citation omitted); *accord Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 596 n.9 (2d Cir. 2007) ("[C]anons of construction forbid contractual interpretations that lead to absurd results." (citation omitted)).   Moreover, a court should not interpret a contract in a way that would be "commercially unreasonable, or contrary to the reasonable expectations of the parties." *Samba Enters., LLC v. iMesh, Inc.*, No. 06 Civ. 7660(DLC), 2009 WL 705537, at *5 (S.D.N.Y. Mar. 19, 2009) (quoting *Lipper Holdings, LLC v. Trident Holdings, LLC,* 1 A.D.3d 170, 171 (1st Dep't 2003)).

## I.   THE PLAIN TERMS OF THE INDENTURE PERMIT THE REQUISITE NOTEHOLDERS TO DIRECT THE LIQUIDATION OF THE TRUST ESTATE

Summary judgment is appropriate at this early stage of the proceeding because the undisputed facts, applied to the clear and unambiguous terms of the Indenture, conclusively establish Lansuppe's right to direct the liquidation of the Trust Estate.

Specifically, it is undisputed (and indisputable) that:  (1) Lansuppe holds more than 66-2/3% of the aggregate principal amount of outstanding Class A-1 Notes; (2) the Soloso Notes were accelerated to maturity, on the basis of an Event of Default under Section 5.1(a) of the Indenture; and (3) Lansuppe directed the Trustee to liquidate the Trust Estate on July 31, 2015. (*See supra* at 2-3.)   On these undisputed facts alone, the Court can make the following determinations, which are sufficient to resolve the narrow controversy before it:

*First*, Lansuppe, as a holder of more than 66-2/3% of the aggregate principal amount of outstanding Class A-1 Notes, constitutes the Requisite Noteholders.  (*See* Indenture § 1.1, at 25

8

("'Requisite Noteholders' . . . shall mean the Holders of at least 66-2/3% of the Aggregate Principal Amount of Outstanding Class A-1 Notes . . . .").)

*Second*, the acceleration of the Notes in June 2013 triggered the Requisite Noteholders' right to direct the liquidation of the Trust Estate.  (*See* Indenture § 5.4(a)(iv) ("If the notes have been declared due and payable and such declaration and its consequences have not been rescinded or annulled . . . the Trustee . . . shall, upon direction by the Requisite Noteholders . . . exercise any remedies of a secured party under the UCC including the sale or liquidation of the Trust Estate . . .").)

*Third*, because the Failure to Pay Event of Default that gave rise to acceleration occurred under Section 5.1(a) of the Indenture, the Trustee needed to receive a direction from the Requisite Noteholders *only*, as opposed to 100% of the Noteholders, in order to carry out the liquidation.  (*See* Indenture § 5.4(a) ("[T]he Trustee may not sell or liquidate the Trust Estate, or any portion thereof, or any rights or interest therein, unless . . . in the case of an acceleration resulting from an Event of Default set forth in Section 5.1(a) . . . , the Requisite Noteholders have so directed the Trustee").)

## II.    THE ALLEGED 2005 EVENT OF DEFAULT DOES NOT NEGATE THE RIGHT OF THE REQUISITE NOTEHOLDERS TO LIQUIDATE THE TRUST ESTATE

The position taken by the Disputing Noteholders—that, as a result of the Alleged 2005 Event of Default, *any liquidation of the Trust Estate* on the basis of *any Event of Default thereafter* must be directed by 100% of the Noteholders—has no basis in the text of the Indenture.

The Disputing Noteholders' argument relies entirely on the proviso at the end of Section 5.4(a) of the Indenture, which sets forth two different approval requirements for liquidation of

9

the Trust Estate, depending on the nature of the Event of Default that caused the Notes to be accelerated:

> **Part (x):**  "[I]n the case of an acceleration resulting from [a Failure to Pay] Event of Default set forth in Section 5.1(a)," the Trustee is permitted to liquidate if "the ***Requisite Noteholders have so directed***."  (Indenture § 5.4(a), part (x) (emphasis added).)

> **Part (y):**  In the case of an acceleration resulting from "any other Event of Default," the Trustee is permitted to liquidate only if "***100% of the Noteholders have so directed***."  (Indenture § 5.4(a), part (y) (emphasis added).)

Although part (y) of the proviso at the end of Section 5.4(a) requires that 100% of Noteholders approve a liquidation where acceleration results from "any other Event of Default," it says nothing about the requirement for a liquidation where acceleration results from a Failure to Pay Event of Default under Section 5.1(a), which is expressly addressed in part (x) of the proviso.  Moreover, part (x) and part (y) are separated by the disjunctive "or," which makes clear that they deal with two separate and alternative liquidation scenarios.  *See, e.g.*, *Portside Growth & Opportunity Fund v. Gigabeam Corp.*, 557 F. Supp. 2d 427, 431 (S.D.N.Y. 2008) ("[T]he ordinary presumption [is] that the term 'or' expresses an alternative."); BLACK'S LAW DICTIONARY 366 (10th ed. 2009) ("[I]n a legal instrument, . . . *or* joins a disjunctive list to create alternatives.").

If the drafters of the Indenture had intended to provide that the occurrence of an Event of Default under Section 5.1(b), (c), (d) or (e) negated the Requisite Noteholders' ability to direct liquidation of the Trust Estate following an acceleration resulting from a Failure to Pay Event of Default under Section 5.1(a), they could have done so, but they did not.

In addition to finding no support in the terms of the Indenture, the Disputing Noteholders' interpretation of Section 5.4(a) must also be rejected because it would lead to a commercially unreasonable and absurd result.  *See Mastrovincenzo*, 435 F.3d at 104; *Samba*

10

*Enters.*, 2009 WL 705537 at *5.  By permitting the Requisite Noteholders to direct a liquidation in the case of an acceleration resulting from a Failure to Pay Event of Default, the Indenture ensures that senior Noteholders are able to guard against the risk of loss by liquidating the Trust Estate before the value of the underlying trust assets deteriorates to such a level that senior Noteholders will be unable to recover their principal investment.  It would make absolutely no sense to condition this right upon the absence of any other Events of Default under Section 5.1.  If anything, the existence of other Events of Default may make it even more imperative for senior Noteholders to guard against the risk of loss by liquidating the Trust Estate following a Failure to Pay Event of Default.

## III.   THE ALLEGED 2005 EVENT OF DEFAULT HAS BEEN WAIVED, MOOTING ANY IMPACT IT MIGHT HAVE ON LANSUPPE'S RIGHT TO LIQUIDATE

Even if the Court were minded to agree with the Disputing Noteholders that, as a result of the Alleged 2005 Event of Default, *any* liquidation of the Trust Estate on the basis of *any* Event of Default thereafter must be directed by 100% of the Noteholders, summary judgment would still be appropriate because the Requisite Noteholders have waived the Alleged 2005 Event of Default and its consequences, as they are empowered to do under the Indenture.  (SOMF ¶ 13-14; Indenture § 5.15 ("Prior to the time a judgment or decree for payment of the money due has been obtained by the Trustee, the Requisite Noteholders may on behalf of the Holders of all the Notes waive any past Default and its consequences . . . .").)  A Section 5.15 waiver "restore[s]" the Trustee and the Holders of the Notes "to their former positions and rights" under the Indenture and the Event of Default is "deemed to be cured, for every purpose of this Indenture." (Indenture § 5.15.)   Thus, even if the Alleged 2005 Event of Default gave rise to some heightened approval requirement for liquidation of the Trust Estate following subsequent Events

of Default—which it did not—those consequences have been waived and all Noteholders have been restored to their former positions and rights.

## CONCLUSION

For the foregoing reasons, Lansuppe respectfully submits that its Motion for Summary Judgment made by Order to Show Cause should be granted, and that Lansuppe is entitled to the relief set forth in its [Proposed] Order on Summary Judgment, filed contemporaneously with this brief, including an order: (a) construing Section 5.4(a) of the Indenture to authorize the Requisite Noteholders to direct the liquidation of the Trust Estate in the case of an acceleration resulting from an Event of Default under Section 5.1(a) of the Indenture, regardless of whether a pre-existing Event of Default under Section 5.1(e) of the Indenture has occurred; (b) declaring that, under Section 5.4(a)(iv) of the Indenture, the Trustee is required to comply with the direction of the Requisite Noteholders, issued on or about July 31, 2015, to liquidate the Trust Estate; and (c) instructing the Trustee to administer the liquidation of the Trust Estate as directed by the Requisite Noteholders.


DATED:       New York, New York           Respectfully submitted,
             September 11, 2015
                                           QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP


                                           By: _____
                                             Jonathan E. Pickhardt
                                             jonpickhardt@quinnemanuel.com
                                             Andrew S. Corkhill
                                             andrewcorkhill@quinnemanuel.com
                                             Blair A. Adams
                                             blairadams@quinnemanuel.com


                                             51 Madison Avenue, 22nd Floor

New York, New York 10010
(212) 849-7000

*Attorneys for Plaintiff*
*Lansuppe Feeder, LLC*