**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LANSUPPE FEEDER, LLC

     Plaintiff,

  vs.

WELLS FARGO BANK, NATIONAL
ASSOCIATION, as Trustee for Soloso CDO
2005-1 LTD.

     Defendant,

  and

SOLOSO CDO 2005-1 LTD.,

     Nominal Defendant.

  and

OXFORD UNIVERSITY BANK; CITIZENS
BANK & TRUST COMPANY; COASTAL
COMMERCE BANK; GUARANTY BANK
AND TRUST COMPANY; BANKFIRST
FINANCIAL SERVICES as Successor-in-
Interest to Newton County Bank; THE FIRST,
A NATIONAL BANKING ASSOCIATION;
COPIAH BANK, NATIONAL
ASSOCIATION; and PRIORITYONE BANK

     Interested Third-Parties

Case No. 1:15-cv-07034 (LTS) (KNF)

**MEMORANDUM IN**
**OPPOSITION TO LANSUPPE FEEDER, LLC'S MOTION FOR SUMMARY**
**JUDGMENT AND IN SUPPORT OF THE INTERVENORS'**
**CROSS MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT                                                                            1

II.  STATEMENT OF UNDISPUTED FACTS                                                                  4

A.  An Explanation of the Collateral at Issue:  TruPS                                               4

B.  The First Event of Default:  Violation of the Investment Company Act of 1940                   5

C.  The Second Event of Default:  Non-Payment                                                       6

D.  Correspondence Between the Trustee and the Intervenors                                          7

E.  The Issuers' Futile Attempt to Cure the ICA Violation                                           9

F.  Notice of Liquidation and Ensuing Litigation                                                    9

III.  ARGUMENT                                                                                      11

A.  The Court Should Decline to Exercise Jurisdiction Over This Action.                            11

B.  Lansuppe Lacks Standing to Sue Under the Indenture.                                            16

C.  Granting Summary Judgment in Favor of Lansuppe Violates the ICA.                               17

D.  The Intervenors Are Entitled to Summary Judgment on Their Cross-Claims.                        20
   1.  The Issuer was in 2005 and is Now Required to Register as an Investment Company
      Under the Investment Company Act.                                             20
   2.  If the Issuer Does Not Register as an Investment Company, the Intervenors are Entitled to
      Rescission of Their Purchase of the Notes.                                    21
   3.  The Intervenors Are Entitled to a List of All Noteholders.                             22

CONCLUSION                                                                                          22

# TABLE OF AUTHORITIES

## CASES

*Applestein v. Province of Buenos Aires,*
 415 F.3d 242 (2d Cir. 2005)..................................................................... 16, 17

*Bloomfield v. Bloomfield,*
 97 N.Y.2d 188 N.E.2d 950, (2001)................................................................. 17

*Bonvecchi v. Republic of Argentina,*
 2009 WL 1441086 (S.D.N.Y. May 22, 2009) ................................................. 16

*Brown v. Bullock,*
 194 F.Supp. 207 (S.D.N.Y 1961) ..................................................... 18, 20, 21

*City of New York v. Mickalis Pawn Shop, LLC,*
 645 F.3d 114 (2d Cir. 2011)............................................................................ 14

*D.E. Shaw Laminar Portfolios, LLC v. Archon Corp.,*
 570 F. Supp. 2d 1262 (D. Nev. 2008) *aff'd in part sub nom.* 483 F. App'x 358 (9th Cir.
 2012) ................................................................................................................ 16

*Fontana v. Republic of Argentina,*
 415 F.3d 238 (2d Cir. 2005)............................................................................ 16

*Jonas v. Estate of Leven,*
 2015 WL 4522763 (S.D.N.Y. 2015)..................................................... 14, 15, 16

*Liberty Mutual Ins. Co. v. Fairbanks Co.,*
 17 F. Supp. 3d 385 (S.D.N.Y. 2014) .............................................................. 12

*Mareno v. Rowe,*
 910 F.2d 1043 (2d Cir. 1990).......................................................................... 14

*Marshak v. Reed,*
 2000 WL 33152076 (E.D.N.Y. 2000), *aff'd* 13 F. App'x 19 (2d Cir. 2001)................. 13

*Mathers Fund, Inc. v. Colwell Co.,*
 564 F.2d 780 (7th Cir. 1977) .......................................................................... 21

*Mattel, Inc. v. Louis Marx & Co.,*
 353 F.2d 421 (2d Cir. 1965)) .......................................................................... 11

*Meeropol v. Nizer*,
    505 F.2d 232 (2d Cir. 1974)............................................................. 12

*N.L.R.B. v. Local 32B-32J Serv. Employees Int'l Union*,
    353 F.3d 197 (2d Cir. 2003)......................................................... 17, 19

*Oleg Cassini, Inc. v. Serta, Inc.*,
    2012 WL 844284 (S.D.N.Y. 2012).................................................. 13

*Regions Bank v. Wieder & Mastroianni, P.C.*,
    170 F. Supp. 2d 436 (S.D.N.Y. 2001) ...................................... 1, 11, 12

*Royal Park Investments SA/NV v. HSBC Bank USA, Nat. Ass'n*,
    2015 WL 3466121 (S.D.N.Y. 2015).............................................. 16

*SEC v. Ross*,
    504 F.3d 1130 (9th Cir. 2007) ..................................................... 14

*Silber v. Mabon*,
    957 F.2d 697 (9th Cir.1992) ........................................................ 16

*Societe d'Assurance de l'Est SPRL v. Citigroup Inc.*,
    2011 WL 4056306 (S.D.N.Y. Sept. 13, 2011)............................... 14

*Sunward Electronics, Inc. v. McDonald*,
    362 F.3d 17 (2d Cir. 2004)........................................................... 15

*Wiener v. Eaton Vance Distrib, Inc.*,
    2011 WL 1233131 (D. Mass. Mar. 30, 2011)................................ 21

*William Gluckin & Co. v. International Playtex Corp.*,
    407 F.2d 177 (2d Cir. 1969)................................................... 1, 11, 12

*Wyler-Wittenberg v. Metlife Home Loans, Inc.*,
    899 F. Supp. 2d 235 (E.D.N.Y. 2012) .......................................... 12

## STATUTES

15 U.S.C. § 80a-2(51)(A) ......................................................................... 8

15 U.S.C. § 80a-2(a)(51)(A)(iv) ............................................................. 18

15 U.S.C. § 80a-3 .................................................................................... 18

15 U.S.C. § 80a-46(a) ............................................................................. 18

15 U.S.C. § 80a-7 ................................................................................................... 18, 21

15 U.S.C.A. § 80a-3(c)(7) ....................................................................................... 2, 18

15 U.S.C.A. § 80a-46(b)(1) ..................................................................................... 18

15 U.S.C.A. § 80a-46(b). ......................................................................................... 3

## **RULES**

N.Y. C.P.L.R. § 301 ................................................................................................. 14

N.Y. C.P.L.R. § 302 ................................................................................................. 14

N.Y. C.P.L.R. § 302(a) ............................................................................................ 15

Intervening Defendants, Oxford University Bank; Citizens Bank & Trust Company; Coastal Commerce Bank; Guaranty Bank and Trust Company; BankFirst Financial Services as Successor-in-Interest to Newton County Bank; The First, A National Banking Association; Copiah Bank, National Association; and PriorityOne Bank (the "Intervenors"), through undersigned counsel, Jones Walker LLP and Mavronicolas & Dee, LLP, submit this combined memorandum in opposition to Plaintiff Lansuppe Feeder, LLC's ("Lansuppe") motion for summary judgment made by Order to Show Cause and in Support of the Intervenors' cross-motion for summary judgment.

## I. PRELIMINARY STATEMENT

The Second Circuit has "long followed the 'first-filed rule' in deciding whether a case should be stayed or dismissed in favor of a case pending in another federal court." *Regions Bank v. Wieder & Mastroianni, P.C.*, 170 F. Supp. 2d 436, 439 (S.D.N.Y. 2001) (citing *William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969). The Intervenors filed an action in the United States District Court for the Northern District of Mississippi on August 21, 2015, captioned *Oxford University Bank v. Wells Fargo Bank, National Association, as Trustee for Soloso CDO 2005, Ltd.*, Case No. 3:15-cv-00145 (Aug. 21, 2015 (the "Mississippi Action") asserting overlapping issues with the present action. Whether the court in Mississippi has personal jurisdiction over Lansuppe is not relevant to the application of the first to file rule. Indeed, that rule is more applicable in this circumstance because the Court here lacks personal jurisdiction over the Intervenors. The prudent and required course of action for this Court is to stay these proceedings pending the resolution of the Mississippi Action.

Because Lansuppe's claims imperil the Intervenors' interests, the Intervenors oppose Lansuppe's motion for summary judgment and cross-move for summary judgment out of an

abundance of caution, should the Court determine it may proceed hearing this matter over the Intervenors' objections.[1]

On the merits, this case involves notes representing interests in a collateralized debt obligation ("CDO") backed by trust preferred securities (the "Soloso CDO 2005-1 Notes") issued by Soloso CDO 2005-1, Ltd. (the "Issuer"), a Cayman Islands registered entity.

The issuer issued the notes as unregistered securities taking advantage of the exemption in Section 3(c)(7) of the Investment Company Act of 1940 (the "ICA") that does not require issuers of securities to register as investment companies with the Securities and Exchange Commission if the sale of those securities is limited to Qualified Purchasers, as defined in the ICA.  15 U.S.C.A. § 80a-3(c)(7).  The Soloso 2005 CDO is governed by an Indenture that provides notes may only be sold to Qualified Purchasers as defined in the ICA.

The Intervenors purchased Soloso CDO 2005-1 Notes at the time of issuance, or on the secondary market.  Unbeknownst to the Intervenors, at the time of the issuance six banks, First Commercial Bank as Successor-in-Interest to Desoto County Bank, First State Bank, Holmes County Bank and Trust Company, Bank of Morton, Bank of Kilmichael and Commercial Bank (DeKalb) (the "Non-Qualified Purchasers"), purchased Soloso CDO 2005-1 Notes while not having the requisite level of investments, $25 million, to be Qualified Purchasers under the ICA. The Non-Qualified Purchasers were unaware that they were required to be, but were not, Qualified Purchasers under the ICA.

---

[1] Lansuppe does not have standing to bring claims under the Indenture as a beneficial holder of the Soloso CDO 2005-1 Notes.  Second Circuit law is clear that only the holder in whose name the notes are registered - in the case of the Soloso CDO 2005-1 Notes, the registered holder is Cede & Co., an affiliate of the Depository Trust Corporation - may assert rights as a "noteholder."  This requirement, however, can be waived.  If the Trustee chooses to waive this requirement to allow Lansuppe to assert rights as a Noteholder under the trust Indenture, it must do the same for the Intervenors and allow those banks, as beneficial holders, the benefit of those same rights as provided in the Indenture.

Once a Non-Qualified Purchaser purchases securities from an unregistered issuer, that issuer loses the benefit of its exemption from registration under the ICA and must register as an investment company.  There is no mechanism under the ICA to cure this violation and the requirements of the ICA cannot be waived through some mechanism provided for in a contract between private parties.

Regardless of whether Lansuppe's interpretation of the Indenture is correct, its attempt to waive the violation of the ICA is void.  The Court cannot order the Trustee to liquidate the Trust Estate because of the payment Event of Default because the Court will then in effect be permitting a waiver of the Issuer's violation of the ICA.  The Court can take only one course of action - require the Issuer to register with the Securities and Exchange Commission as an investment company.  If the Issuer does not register as an investment company and the Trustee proceeds to liquidation in violation of the ICA, then the ICA provides one remedy - rescission of the Intervenors' purchase of the Soloso CDO 2005-1 Notes.  Section 47(b) of the ICA provides rescission as a remedy when a private contract as written or as performed violates the ICA.  15 U.S.C.A. § 80a-46(b).

If the Court determines it has jurisdiction to rule on the merits in this action, it should (a) deny Lansuppe's motion for summary judgment to order the Trustee to liquidate the Trust Estate because that instruction violates the ICA; (b) grant the Intervenors' motion for summary judgment requiring the Issuer to register as an investment company; (c) declare that the failure of the Issuer to register as an investment company entitles the Intervenors to rescission of their purchase of the notes; and (d) require the Trustee to provide the Intervenors with a list of all beneficial holders of the Soloso CDO 2005-1 Notes.

## II.  STATEMENT OF UNDISPUTED FACTS

**A.      An Explanation of the Collateral at Issue:  TruPS**

Trust preferred securities ("TruPS") are hybrid securities having dual characteristics of equity and debt securities.  Before the financial crisis, TruPS became a common component of banks' and bank holding companies' capitalization because they provided bank holding companies and other financial institutions an efficient means of raising capital that appeared on their balance sheets as debt while qualifying for favorable bank regulatory treatment as capital.

Typically a bank holding company issued TruPS by first establishing a trust, issuing debt to the trust, and then having the trust issue preferred stock to investors; hence the name "trust preferred securities."  These TruPS typically had characteristics of both subordinated debt and preferred stock, being long-term investments, allowing early redemption by the issuer, making fixed or variable interest payments and maturing at face value.  Deferral of payment was a common feature of TruPS issued by bank holding companies.

Most TruPS series allow voluntary interest payment deferral for up to twenty quarters if the bank or bank holding company issuing the debt securities is unable or unwilling to make the current interest payments due to a lack of funds.  The lack of funds may be due to regulatory restrictions on payment of dividends from the bank to the holding company due to an enforcement order, regulatory requirements to increase capital levels precluding the bank paying dividends to the holding company or, more typically an agreement with a regulator in the form of a memorandum of understanding ("MOU") or an inability to pay dividends due to lack of earnings to support the payment of dividends.[2]   The penalty for deferral is a prohibition on

---

[2]   Under federal and most state law, banks are precluded from paying dividends in excess of current year profit without regulatory approval.

payment of dividends on equity securities of the issuer of the debt securities until the accrued interest on such securities is brought current through the last payment date.

In this case, TruPS issued by bank holding companies, and occasionally banks, constitute the collateral underlying the collateralized debt obligation ("CDO") Soloso CDO 2005-1 Notes. In other words, the Soloso CDO 2005-1 Notes are a securitized portfolio of various TruPS.[3] (RSOMF, ¶ 26).[4]

## B.    The First Event of Default:  Violation of the Investment Company Act of 1940

The Issuer of the Soloso CDO 2005-1 Notes is not a registered investment company and sold these unregistered securities under exemptions provided for in the ICA.  (RSOMF, ¶ 25). Those exemptions limited sales to only "Qualified Purchasers," as defined under the Indenture and the ICA.  *Id.*  The Issuer's sales of notes to non-qualified purchasers require its registration as an investment company under the ICA.  *Id.*

Section 5.1 of the Indenture defines several different types of Events of Default, and Section 5.4 provides the remedies for default.  (ISOMF, ¶ 12).  Under Section 5.1(e), an Event of Default exists if the Co-Issuers or the Trust Estate is required to register as an "investment company" under the Investment Company Act of 1940, 15 U.S.C. § 80a-1, *et seq*.  (ISOMF, ¶ 12).  Under Section 5.4, 100% of all Noteholders must approve liquidation in the case of a Section 5.1(e) Event of Default.  (ISOMF, ¶ 12).

The Non-Qualified Purchasers – those banks at the time of the purchase of the notes – were companies with less than $25 million in investments and the Intervenors either purchased

---

[3] The Intervenors have no dispute with Lansuppe's description of a CDO in its Memorandum of Support of its Motion for Summary Judgment and so will not repeat that description here.

[4] The Intervenors' Local Rule 56.1(b) Reply to Plaintiff's Statement of Material Facts is cited herein as "RSOMF." The Intervenors' Local Rule 56.1(a) Statement of Material Facts offered in support of the Intervenors' Cross-Motion for Summary Judgment is cited herein as "ISOMF."

Soloso 2005-1 CDO Notes at issuance or on the secondary market.  (ISOMF, ¶ 13).  Neither the Intervenors nor the Non-Qualified Purchasers were provided the Indenture or other documentation related to the Soloso 2005-1 CD Notes upon purchase of the notes.  (ISOMF, ¶ 14).  In addition, they were not required to certify that they qualified as purchasers under the Indenture and ICA. (ISOMF, ¶ 14).

**C.    The Second Event of Default:  Non-Payment**

Section 5.1(a) of the Indenture provides for, "a default in the payment of the Periodic Interest Amount due on [the] Class A-1 Notes."  (ISOMF, ¶ 15).  Upon that type of default, the Indenture requires a vote of only "66-2/3" of the holders of the "Aggregate Principal Amount of the Outstanding Class A-1 Notes," a class of Noteholders that does not include the Intervenors, liquidate the trust.  *Id.*

On June 7, 2013, Wells Fargo posted a notice on its website that a payment default had occurred under Section 5.1(a)(iii)(A) of the Indenture and that the Aggregate Principal Amount of the Notes was immediately due and payable under Section 5.2(a) of the Indenture.  (RSOMF, ¶ 5; ISOMF, ¶ 15).  The Intervenors did not receive a copy of this notice until early December 2014, when an investment advisor to the Intervenors located the notice on Wells Fargo's website and notified the Intervenors of the Event of Default.  (ISOMF, ¶ 17).  At that time, Wells Fargo had not given notice that it was liquidating the Trust Estate.  *Id.*

Upon liquidation, under Sections 11.1(b) and (d) of the Indenture, the senior Noteholders are entitled to be paid in full the Cumulative Interest Amount and the Aggregate Principal Amount before junior Noteholders (including the Intervenors) become entitled to any proceeds of the liquidation.  (ISOMF, ¶ 18).  The collateral composing the Trust Estate (here the trust preferred securities) will fetch approximately only an estimated $0.65 on the dollar or less in a

liquidation sale, likely leaving insufficient funds to pay the Intervenors. (RSOMF, ¶ 27). While the Intervenors do have the opportunity to bid in the collateral, they lack the practical ability to do so because Lansuppe and other senior Noteholders may bid in the collateral, hold it until the issuers of the trust preferred securities resume payment on the expiration of the trust preferred securities issuers' MOU's, which prevent payment, and thus realize a windfall.

**D.      Correspondence Between the Trustee and the Intervenors**

As a result of these developments, the Intervenors agreed to coordinate requesting certain information and, on December 9, 2014, Coastal Commerce Bank wrote to Wells Fargo, as Trustee, requesting a list of all other Noteholders, as well as the Memorandum of Association of the Issuer, the Articles of Association of the Issuer, the resolutions of the director for the Issuer authorizing the issuance of the Notes, including but not limited to the Class A Notes, so that the Intervenors might gain information to help them protect their interests as junior tranche noteholders. (ISOMF, ¶ 20). The letter noted that Section 2.5 of the Indenture, which provides that "[s]o long as an Event of Default shall be continuing, the Note Register shall promptly, upon the written request of a Noteholder … furnish such Noteholder … with a list of all other Noteholders," entitled the Intervenors to this information. (ISOMF, ¶ 20).

On December 17, 2014, Wells Fargo responded that Cede & Co. was the record Noteholder for every Note and provided no other information. (ISOMF, ¶ 22). On December 22, 2014, Coastal Commerce Bank again asked for a list of Noteholders and stated that the list should include the identities of the beneficial holders of the Notes. (ISOMF, ¶ 23). Coastal Commerce Bank never received a list of the beneficial holders of the Notes. *Id.*

On January 16, 2015, Coastal Commerce Bank and Oxford University Bank, as well as other Intervenors, notified the Trustee that they had become aware that Notes were sold in 2005

{N3106353.1}

7

to certain banks, including without limitation to Bank of Morton, that were not Qualified Purchasers as defined in the Indenture and in 15 U.S.C. § 80a-2(51)(A), thus requiring either of the Co-Issuers or the Trust Estate to register as an "investment company" under the ICA. (ISOMF, ¶ 24).  Section 5.1(e) provides that an Event of Default occurs when either the Co-issuers or the Trust Estate are required to be registered as an investment company.  (ISOMF, ¶ 12).

In that same January 16, 2015 correspondence, the Intervenors asserted that pursuant to clause (y) under Section 5.4(a) of the Indenture, the Trustee is not permitted to liquidate the Trust Estate without a 100% vote of all Noteholders, including the Intervenors.  The Intervenors also requested that the Trustee give notice to all Noteholders of the Event of Default under Section 5.1(e).  (ISOMF, ¶ 24).  Coastal Commerce Bank received a response from Wells Fargo on February 20, 2015, taking the position that it was not apparent that a Section 5.1(e) Event of Default had occurred.  (ISOMF, ¶ 26).  It also asserted that it was "considering whether remedial action may be appropriate."  *Id.*  To the Intervenors' knowledge, Wells Fargo has not provided notice of the Section 5.1(e) Event of Default to any other Noteholders.  (ISOMF, ¶ 27).

On March 19, 2015, the Intervenors responded to Wells Fargo's February 20, 2015 correspondence.  (ISOMF, ¶ 27).  The Intervenors reasserted that an antecedent Event of Default had occurred in 2005 when Bank of Morton purchased Notes and the issuers failed to register, and thus a 100% Noteholder vote was required for liquidation, and that all Noteholders were entitled to notice of this Event of Default.  (ISOMF, ¶ 27).  The Intervenors also reiterated their request for a list of all beneficial owners of the Notes.  (ISOMF, ¶ 27).  Wells Fargo has never provided the Intervenors with a list of beneficial owners of the Notes and has not given notice to all Noteholders of the Event of Default under Section 5.1(e).  (ISOMF, ¶ 27).

**E.**     **The Issuers' Futile Attempt to Cure the ICA Violation**

On July 31, 2015, the Issuer wrote to Bank of Morton asserting that the purchase by Bank of Morton was in violation of the representations and certifications made or deemed made in connection with the purchase of the Notes.  (ISOMF, ¶ 28).  The July 31 letter further asserted that the purchase was void *ab initio* under Section 2.5(g) of the Indenture.  (ISOMF, ¶ 28).  Even though the Co-Issuer took the position that the transfer was void, it directed Bank of Morton to transfer its Notes to a Holder which is a Qualified Purchaser within 30 days pursuant to Section 2.5(k) of the Indenture.  (ISOMF, ¶ 28).

On August 7, 2015, counsel for Bank of Morton responded to the Co-Issuer stating that it never made any representations and that it was not willing to risk violating state and federal securities law by offering the Notes for sale without providing full disclosure of all material information regarding the Notes.  (ISOMF, ¶ 29).  Bank of Morton therefore asked for a list of all Noteholders known or believed to be Qualified Institutional Buyers and Qualified Purchasers, as well as updated disclosures regarding all material information regarding the Notes, including without limitation, any fair valuation of the Notes and the status and prospect of any potential liquidation of collateral underlying the Notes.  (ISOMF, ¶ 29).  Receiving no response, and out of abundance of caution, Bank of Morton sold its notes even though that sale violated the non-waiver provisions in Section 47(b) of the ICA.   The remaining Non-Qualified Purchasers continue to own the notes they purchased.

**F.**     **Notice of Liquidation and Ensuing Litigation**

On August 11, 2015, Wells Fargo posted to its website a Notice of Liquidation Direction and Suspension of Payments, stating that the Requisite Noteholders (defined under the Indenture of 66 2/3% of the senior tranche Noteholders) had directed Wells Fargo as Trustee to liquidate

the Trust Estate as a remedy for the Event of Default under Section 5.1(a)(iii)(A).  (ISOMF, ¶ 30).  The Notice was not sent to the beneficial noteholders and was not accompanied by an Accountant's Certificate, as required by Section 5.4(a) of the Indenture.

On August 21, 2015, the Intervenors filed the Mississippi Action.  (RSOMF, ¶ 8).  The Intervenors did not name Lansuppe as a party to that action because the Intervenors were unaware of its identity as a beneficial Noteholder until the filing of this action.

In the Mississippi Action, the Intervenors seek a judgment declaring that: (a)  the Soloso CDO 2005-1 was and is required to be registered as an Investment Company under the Investment Company Act; (b) Sections 2.5(g) and 2.5(k) are attempts to create contractual safe harbors from compliance with the ICA prohibited under Section 47 of the ICA and are unenforceable; (c) Sections 2.5(g) and 2.5(k) of the Indenture do not and cannot remedy the failure to register as an Investment Company; (d) that 100% of Noteholders are required under Section 5.4(a) to vote on any liquidation due to the occurrence at inception in 2005 of an Event of Default under Section 5.1(e) of the Indenture, pre-dating the April 24, 2013 Event of Default; and (e) Defendant has not sent written notice to each of the Noteholders of any proposed sale or liquidation of the Trust Estate, together with a brief description thereof accompanied by an Accountant's Certificate as required by Section 5.4(a) of the Indenture, and that this notice is a condition precedent to any liquidation.  (RSOMF, ¶ 8).

After filing that complaint, counsel for the Trustee informed counsel for the Intervenors that the Trustee was unaware of the identities of the beneficial noteholders and that the Trustee only knew the identity of the record noteholder, Cede & Co., an affiliate of the Depository Trust Corporation.  (ISOMF, ¶ 33).  Because of those discussions and the Trustee's December 17, 2014 letter, the Intervenors understand that the Trustee maintains that a Noteholder, for purposes

of the Indenture, is defined as the record noteholder, Cede & Co., not the holders of beneficial interests in the notes, such as Lansuppe and the Intervenors.  *Id.*

On September 7, 2015, Lansuppe notified the Trustee that it was exercising its rights under the Indenture to waive the section 5.1(e) Event of Default.  (ISOMF, ¶ 34).   The Intervenors only learned of this waiver when counsel for the Trustee informed counsel for the Intervenors of the filing of this lawsuit.  (ISOMF, ¶ 34).

### III.  ARGUMENT

Lansuppe is not entitled to summary judgment.  The Intervenors were the first to file a lawsuit in the Northern District of Mississippi requesting a court order directing the Trustee to interpret properly the Indenture.  That court is the proper forum to hear these claims.  If the Court determines it has jurisdiction to rule on the merits, Lansuppe has failed to establish (1) standing to bring its claims and (2) that it is entitled to an order requiring the Trustee, as a matter of law, to liquidate per Lansuppe's instructions, because that will violate the ICA.  Because of this, the Intervenors are entitled to denial of Lansuppe's motion for summary judgment and to summary judgment on their counter-claims for declaratory and injunctive relief and claims for rescission under the ICA.

**A.**     **The Court Should Decline to Exercise Jurisdiction Over This Action.**

The Court should stay this action pending adjudication by the Mississippi court of the Intervenors' first filed action.  The Second Circuit has "long followed the 'first-filed rule' in deciding whether a case should be stayed or dismissed in favor of a case pending in another federal court."  *Regions Bank v. Wieder & Mastroianni, P.C.*, 170 F. Supp. 2d 436, 439 (S.D.N.Y. 2001) (citing *William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969); *Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421, 423 (2d Cir. 1965)).  "Under

this rule, where two actions involve substantially the same issues, 'the first suit should have priority, 'absent the showing of a balance of convenience in favor of the second action, or unless there are special circumstances which justify giving priority to the second.'" *Id.* (quoting *William Gluckin & Co.*, 407 F.2d at 178).

The overlap in issues between the Mississippi Action and this action is obvious. Lansuppe's Complaint cites the Mississippi Action as the impetus for this case.  (Docket 1, Complaint, ¶ 35).  Both suits ask for a declaratory judgment regarding interpretation of the Indenture, and both cases ask for equitable relief against the Trustee.  *Compare* Docket 1, Complaint *with* Docket 8-5, Declaration of Representative of Lansuppe Feeder, Exhibit "E." The issues are the same.

There is also substantial overlap in the parties.  Both suits are by beneficial owners against Wells Fargo as Trustee for the Soloso CDO 2005-1.  *Id.*  Furthermore, "the first-filed rule may apply even if the two actions at issue involve different parties."  *Id.* at 441.  In *Regions Bank*, the Court stayed the second-filed action even though court hearing the first-filed action lacked personal jurisdiction over one of the parties.  The decision involved two bank fraud cases by the same plaintiff against different defendants.  *Id.* at 439.  The first action was in Georgia against a lender; the second in New York against the lender's settling agent.  *Id.*  The settling agent brought third party indemnity claims against the lender in the New York action.  *Id.*  The court stayed the New York action pending the Georgia action, finding that even though the settling agent was not a party to that suit, a stay served the purposes of judicial economy.  *Id.* at 441.[5]

---

[5]  *See also Meeropol v. Nizer,* 505 F.2d 232, 235 (2d Cir. 1974) (affirming injunction of second-filed action involving same plaintiffs but different defendants); *Liberty Mutual Ins. Co. v. Fairbanks Co.,* 17 F. Supp. 3d 385, 393 (S.D.N.Y. 2014) (holding that the presence of additional parties in first action did not preclude first-filed doctrine); *Wyler-Wittenberg v. Metlife Home Loans, Inc.,* 899 F. Supp. 2d 235, 244-45 (E.D.N.Y. 2012) (dismissing

{N3106353.1}

Lansuppe may protest that the Mississippi court lacks personal jurisdiction over it.  As explained above, other courts have not found that lack of jurisdiction precludes the first-filed doctrine.  The Trustee represents Lansuppe's interests in the Mississippi action.  Docket 8-1, Declaration of Representative Lansuppe Feeder, Exhibit "A," Indenture,[6] § 5.6 ("In any Proceedings brought by the Trustee (and also any Proceedings involving the interpretation of any provision of this Indenture to which the Trustee shall be a party), the Trustee shall be held to represent all the Holders of the Notes subject to the provisions of this Indenture, and it shall not be necessary to make any Holders of the Notes parties to any such Proceedings.").  In its correspondence with the Intervenors, the Trustee has taken the position advocated by Lansuppe here. (ISOMF, ¶  26).  While the Trustee has refused to act until the issues are decided by a court, the Trustee's stated interpretation of the Indenture is in line with Lansuppe's.  Lansuppe's interests are thus protected in the Mississippi action, while the Intervenors' interests in this action are not.

Moreover, this Court lacks personal jurisdiction over the Intervenors, and, to the extent that the Court does not stay this action pursuant to the first to file rule, it should dismiss this action for lack of personal jurisdiction over the Intervenors.  Lansuppe's motion to show cause created an untenable risk for the Intervenors:  if this Court renders judgment before the Mississippi court, then Wells Fargo will be bound by that judgment, and the Mississippi action

---

second-filed wage-and-hours class action even though plaintiffs in actions were not the same, though each fell within the same general category; noting that "in the assessment of whether the 'first-filed' rule is applicable, the Second Circuit plainly does not require the first-filed action and the subsequent action to consist of identical parties."); *Marshak v. Reed,* 2000 WL 33152076, *2 (E.D.N.Y. 2000), aff'd 13 F.  App'x 19 (2d Cir. 2001) (staying second-filed action even where defendants in two actions were not identical); *Oleg Cassini, Inc. v. Serta, Inc.,* 2012 WL 844284, *3 (S.D.N.Y. 2012) (holding that second-filed trademark infringement action should be dismissed even though second action named additional defendants where "in practice, either lawsuit will resolve those parties' interests").

[6] Docket 8-1, Declaration of Representative Lansuppe Feeder, Exhibit "A," Indenture is hereinafter cited as "Indenture."

will be moot.  The Ninth Circuit has held that in similar circumstances, a party may intervene to challenge the Court's lack of personal jurisdiction.  In *SEC v. Ross*, 504 F.3d 1130, 1148-1150 (9th Cir. 2007), a summary receivership proceeding following an SEC enforcement action, the district court ordered non-party sales agents to disgorge profits.  The sales agents intervened to challenge personal jurisdiction.  *Id.*  The Ninth Circuit held that intervention for the purpose of challenging jurisdiction does not waive personal jurisdiction objections.  *Id.*  The Ninth Circuit based its decision on cases holding that assertion of a compulsory counterclaim does not waive jurisdictional defenses.  *Id.*; *cf. City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 139 (2d Cir. 2011) (citing *Ross* for the proposition that intervention does not waive objections to personal jurisdiction, but holding that party cannot collaterally attack judgment after raising an objection).

When the Edge Act forms the basis of a court's subject matter jurisdiction, as it does here, the court applies the personal jurisdiction rules of the forum state.  *See Societe d'Assurance de l'Est SPRL v. Citigroup Inc.*, 2011 WL 4056306, at \*7 (S.D.N.Y. Sept. 13, 2011) (citing *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990)).  Under N.Y. C.P.L.R. § 301, a defendant is subject to personal jurisdiction if it is domiciled in New York, served with process in New York, or continuously and systematically does business in New York.  *Jonas v. Estate of Leven*, 2015 WL 4522763, \*7 (S.D.N.Y. 2015).  None of the Intervenors meets this criteria.  Most are community banks serving small communities in Mississippi and Louisiana.  (RSOMF, ¶ 18).  A few, such as The First, are national banks, but they have no branches or offices in New York.  *Id.* None can be said to "continuously and systematically" do business in New York.  *Id.*

Nor are the Intervenors subject to New York's long-arm statute, N.Y. C.P.L.R. § 302.  "A defendant may be subject to New York's long-arm statute, N.Y. C.P.L.R. § 302, if he engages in

the following acts either in person or through an agent and such acts relate to an asserted claim: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; (2) commits a tortious act within the state; (3) commits a tortious act outside the state but injures a person or property in the state; or (4) owns, uses, or possesses any real property in the state." *Jonas*, 2015 WL 4522763, at \*7 (citing N.Y. C.P.L.R. § 302(a). The Intervenors have committed no torts and own no real property in New York; therefore, the question is whether they have transacted business within the state. Under the Second Circuit's four factor test, the answer is no.

The Second Circuit's four factors are "(i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [the non-domiciliary] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state." *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004). No factor is dispositive, and the court considers the totality of the circumstances. *Id.*

The Intervenors purchased their Soloso 2005-1 CDO Notes in Mississippi and Louisiana either at issuance from the underwriters or on the secondary market, but their status as a beneficial holder of the notes does not make them a party to the Indenture. (ISOMF, ¶¶ 1-8). Only the Trustee, the Issuer and the Noteholders, which under the Indenture are the record Noteholders Cede & Co., are parties to or have rights under the Indenture. The only third-party beneficiary of the Indenture is the Swap Counterparty. Indenture, § 13.8.

The Indenture's choice-of-law clause does specify New York law, but the Intervenors were not even given a copy of the Indenture when they purchased the Notes.  (RSOMF, ¶ 24).  All of the Intervenors' correspondence was sent to the Trustee in Maryland.  (ISOMF, ¶¶ 20, 23, 24).  Under the totality of the circumstances, the Intervenors did not perform "purposeful acts" in New York in relation to this suit and could not have foreseen being party to a suit in New York.  *Jonas*, 2015 WL 4522763, at *8.

**B.      Lansuppe Lacks Standing to Sue Under the Indenture.**

The Indenture defines "Noteholder" and "Holder" as "The Person in whose name a Note or a Class P1 Combination Note is registered in the Note Register or with respect to the Class P1 Preferred Share Component of the Class P1 Combination Notes, the Share Registar."  Indenture, § 1.1.  Lansuppe seeks to enforce rights as a Noteholder, but it is only the beneficial holder of the Notes; its Notes are registered in the name of Cede & Co.[7]  (ISOMF, ¶ 22).  "In the two opinions in *Fontana v. Republic of Argentina*, 415 F.3d 238 (2d Cir. 2005), and *Applestein v. Province of Buenos Aires*, 415 F.3d 242 (2d Cir. 2005), the Second Circuit has held that an owner of a beneficial interest…must receive authorization from the registered holder of the bond before it may sue, but that such authorization may be granted subsequent to the filing of a lawsuit. Alternatively, the [defendant] may waive the authorization requirement."  *Bonvecchi v. Republic of Argentina*, 2009 WL 1441086, at *2 (S.D.N.Y. May 22, 2009); *see also Royal Park Investments SA/NV v. HSBC Bank USA, Nat. Ass'n*, 2015 WL 3466121, at *11 (S.D.N.Y. 2015); *but see D.E. Shaw Laminar Portfolios, LLC v. Archon Corp.*, 570 F. Supp. 2d 1262, 1267 (D. Nev. 2008) *aff'd in part sub nom.* 483 F. App'x 358 (9th Cir. 2012) (interpreting *Applestein* to

---

[7] "Under common industry practice, most publicly traded stock is held in the 'street name' of brokerage houses for the benefit of their customers." *Silber v. Mabon*, 957 F.2d 697, 699 (9th Cir.1992).  Generally, "only brokerage houses or other 'record owners' appear on official corporate transfer records." *Id.* at 699.

allow beneficial holders to sue absent authorization).  The hundreds of cases from the Southern

District of New York dealing with Argentine bonds all hold that the beneficial holder must either

obtain authorization or the defendant must waive the authorization requirement.  Lansuppe has

not come forward with evidence that it has obtained this authorization, and in its response to

requests by the Intervenors for a list of all Noteholders, the Trustee has taken the position in

correspondence with the Intervenors that only "Noteholders" as defined in the Indenture are

entitled to enforce the provisions of the Indenture.  (ISOMF, ¶ 22).  While Lansuppe's lack of

authorization can be cured, the Intervenors must raise the issue now or risk waiving it.  *See*

*Applestein*, 415 F.3d at 245 (holding similar issue of standing waived when not brought at outset

of litigation).

## C.      Granting Summary Judgment in Favor of Lansuppe Violates the ICA.

The Intervenors dispute neither the legal requirements for summary judgment outlined in

Lansuppe's brief nor Lansuppe's characterization of New York law on the interpretation of

contracts.  The Intervenors do draw to the Court's attention, however, that a court cannot order a

party to perform a contract in a way that violates the law.  *N.L.R.B. v. Local 32B-32J Serv.*

*Employees Int'l Union*, 353 F.3d 197, 202 (2d Cir. 2003) ("The law is well settled that

ambiguously worded contracts should not be interpreted to render them illegal and unenforceable

where the wording lends itself to a logically acceptable construction that renders them legal and

enforceable."); *Bloomfield v. Bloomfield*, 97 N.Y.2d 188, 193, 764 N.E.2d 950, 953 (2001)

(holding that when evidence is lacking that both parties intended to violate the law, a contract

that may be construed both lawfully and unlawfully should be construed in favor of its legality).

Section 47 of the ICA explicitly provides that "[a]ny condition, stipulation, or provision

binding any person to waive compliance with any provision of this title or with any rule,

regulation, or order thereunder shall be void."  15 U.S.C. § 80a-46(a); *Brown v. Bullock*, 194 F.Supp. 207, 225 (S.D.N.Y 1961) (noting that "Section 47 of the 1940 Act was copied verbatim from section 26(b) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79z(b)). Both sections provide, in substance, that "any stipulation waiving compliance with any provision of the statute or Commission rule shall be void; and that any contract or performance thereof violating the statute or rule shall be void."  *Id*.  Thus, any attempt to perform a contract in a manner that violates the ICA is void.  *See* 15 U.S.C.A. § 80a-46(b)(1).

Section 3(c)(7) of the ICA provides that an issuer of securities is exempt from the registration requirements set forth in the ICA only if it sold securities exclusively to purchasers who were Qualified Purchasers at the time of acquisition.  15 U.S.C. § 80a-3(c)(7).  Section 2(a)(51)(A)(iv) defines a Qualified Purchaser as, among other things, "any person, acting for its own account or the accounts of other qualified purchasers, who in the aggregate owns and invests on a discretionary basis, not less than $25,000,000 in investments."  15 U.S.C. § 80a-2(a)(51)(A)(iv). An unregistered investment company may not sell securities to an entity with less than $25,000,000 in investments and maintain its exemption from registering as an investment company.  The ICA provides no mechanism for an investment company to maintain the exemption if it has sold securities to a non-qualified purchaser.  15 U.S.C. § 80a-3.  Under the ICA, any sale of securities issued un-registered issuer to a non-qualified purchaser triggers a requirement under the ICA for the company to register because the ICA explicitly prohibits sales of securities by unregistered investment companies except those entitled to the exemptions of Section 3.  *See* 15 U.S.C. § 80a-7.

The Issuer recognizes that the ICA calls for such a result; otherwise the Indenture would not have included Section 5.1(e).  Indenture, § 5.1(e).  The Indenture adopts the same definition

18

of a Qualified Purchaser and prohibits the sale of notes to non-Qualified Purchasers.  Indenture, § 1.1.  Section 2.5(i) of the Indenture requires that each purchaser of notes certify that they are a Qualified Purchaser as defined in the Indenture and ICA.  Indenture, § 2.5(i).  Section 5.1(e) provides that an Event of Default occurs when the Co-Issuers or the Trust Estate become required to register as an investment company.  Indenture, § 5.1(e).

Lansuppe cannot dispute that the Non-Qualified Purchaser Banks purchased Soloso CDO 2005-1 Notes in 2005 (ISOMF, ¶ 13); that a purchase by a non-qualified purchaser of these securities triggers a requirement for the Issuer to register as an investment company under the ICA; and that a requirement to register as an investment company constitutes an Event of Default under Section 5.1(e).  Nonetheless, Lansuppe asserts that the Trustee is free to ignore this Event of Default, which occurred eight years before the payment Event of Default, and order the Trustee to liquidate the Trust Estate because of the payment default.  The law is clear that Courts should avoid interpreting contracts to render them illegal and unenforceable.  *N.L.R.B. v. Local 32B-32J Serv. Employees Int'l Union*, 353 F.3d 197, 202 (2d Cir. 2003).  Whether or not this is a correct reading of the Indenture, as Lansuppe contends, is irrelevant because an order for the Trustee to liquidate the Trust Estate per Lansuppe's instructions requires the Court to countenance violations of the ICA: the Issuer's failure to register as an investment company after the purchase of notes by a Non-Qualified Purchaser and waivers of that violation.  The Court cannot take that action.

Furthermore, Lansuppe's assertion that Section 5.15 allows the Requisite Noteholders to waive the registration Event of Default cannot cure the failure of the Issuer to register as an investment company.  Lansuppe cites no authority that a party to a private contract may waive

requirements of the ICA.  The ICA expressly prohibits waivers and voids any attempts to do so. *See Brown v. Bullock*, 194 F.Supp. at 225 .

Finally, the assertion that Lansuppe must protect against a risk of loss by liquidating the Trust Estate immediately rings hollow.  The Payment Event of Default occurred over two years ago in April 2013.  (RSOMF, ¶ 4).  If the Payment Event of Default realistically threatened Lansuppe's investment, Lansuppe could have taken action to exercise its rights to order liquidation at the time of the payment default.  There is no evidence that Lansuppe faces a greater loss by halting the liquidation.  Lansuppe has not offered any evidence that the value of the TruPS continues to deteriorate.  Its actions suggest the opposite.

The Court cannot grant Lansuppe's request for summary judgment to ignore the Co-Issuers' failure to register as an investment company and liquidate the Trust Estate because to do so would require the Court to endorse a violation of the ICA.[8]

**D.    The Intervenors Are Entitled to Summary Judgment on Their Cross-Claims.**

    **1.    The Issuer was in 2005 and is Now Required to Register as an Investment Company Under the Investment Company Act.**

As discussed at length in Section C, *supra*, the moment the Non-Qualified Purchaser banks purchased Soloso CDO 2005-1 Notes, the Issuer was required to register as an investment company.  The requirements of the ICA cannot be waived.  *Brown v. Bullock*, 194 F.Supp. 207, 225 (S.D.N.Y 1961).  It is undisputed that an unregistered investment company does not qualify for an exemption from registration under the ICA if it sells securities to unqualified purchasers. It is undisputed that the Non-Qualified Purchaser Banks purchased Soloso CDO 2005-1 Notes.

---

[8] In addition, Section 5.4(a) clearly provides that the Trustee must provide an Accounting Certificate with the liquidation notice before liquidation.  Wells Fargo has provided no such certificate and will not be able to assert any reasons for failing to abide by the terms of the provision of the Indenture.

Lansuppe can cite no authority that a party to a private contract can waive a requirement of the ICA.  Any such waivers are void.  *Id*. at 225.

> **2.    If the Issuer Does Not Register as an Investment Company, the Intervenors are Entitled to Rescission of Their Purchase of the Notes.**

The Intervenors are entitled to rescission of the purchases of the Soloso CDO 2005-Notes should the Co-Issuers fail to register as an investment company and the Trustee proceeds to liquidate per Lansuppe's instructions.  "Section 47(b) creates a private right of action for a party to a contract to void or rescind a contract … 'that is made, or whose performance involves a violation of the [ICA], or of any rule, regulation or order thereunder.'"  *Wiener v. Eaton Vance Distrib, Inc.*, 2011 WL 1233131 at *12 (D. Mass. Mar. 30, 2011) (citing *Mathers Fund, Inc. v. Colwell Co.*, 564 F.2d 780, 783 (7th Cir. 1977)).  As stated in Section III, *supra*, an issuer of securities qualifies for the exemption from registration under Section 3(c)(7) of the ICA if that company sells securities only to qualified purchasers.  Any sale of securities to a non-qualified purchaser implicitly triggers a requirement under the ICA for an issuer of securities to register because the ICA explicitly prohibits the sale of securities by unregistered investment companies except those subject to the exemptions in Section 3.  *See* 15 U.S.C.A. § 80a-7.

It is indisputable that it is a plain violation of the ICA for an Issuer to fail to register as an investment company if that issuer does not qualify for an exemption to registration under Section 3 of the ICA.  The Issuer's failure to register as an investment company renders the Indenture that governs the rights that flow from those illegally issued notes unenforceable.  The plain language of Section 47(b) is that, absent registration by the Issuer, the Indenture is unenforceable and that holders of beneficial holders of notes governed by that Indenture may rescind their purchase of the notes.

### 3.     The Intervenors Are Entitled to a List of All Noteholders.

Should the Trustee waive the requirement that Lansuppe seek permission from Cede & Co. to move forward with this lawsuit (or should the Court otherwise find that Lansuppe may proceed with the lawsuit without Cede & Co.'s permission as Noteholder), then the Intervenors have a right to a list of all Noteholders.

Section 2.5 of the Indenture, provides that "[s]o long as an Event of Default shall be continuing, the Note Register shall promptly, upon the written request of a Noteholder … furnish such Noteholder … with a list of all other Noteholders."  Indenture, § 2.5.  The Trustee cannot with one hand allow Lansuppe to take advantage of rights in the Indenture granted to Noteholders and then with the other hand deny those Noteholder rights to the Intervenors.  The Court should order the Trustee to obtain the identities of the beneficial holders of the notes from Cede & Co. and provide that information to the Intervenors.

### CONCLUSION

For the foregoing reasons, the Intervenors respectfully submit that the Court lacks jurisdiction over the dispute and should stay these proceedings pending the outcome of the Mississippi Action.  To the extent the Court determines it has jurisdiction over this matter and Lansuppe has standing to assert its claims, the Intervenors submit that the Court should deny Lansuppe's Motion for Summary Judgment and grant the Intervenors' Motion for Summary Judgment issuing an order: (a) denying Lansuppe's motion for summary judgment ordering the Trustee to liquidate the Trust Estate because that instruction violates the ICA; (b) granting the Intervenors' motion for summary judgment requiring the Issuer to register as an investment company; (c) declaring that the failure of the Issuer to register as an investment company entitles the Intervenors to rescission of their purchase of the notes; and (d) requiring the Trustee to provide the Intervenors with a list of all beneficial holders of the Soloso CDO 2005-1 Notes.

{N3106353.1}

Respectfully submitted,


/s/ Peter C. Dee

Peter C. Dee
Gregori D. Mavronicolas
MAVRONICOLAS & DEE LLP
415 Madison Avenue, 18th Floor
New York, New York  10017
Telephone:  (646) 770-1256
Facsimile:  (866) 774.9005
pdee@mavrolaw.com
gmavronicolas@mavrolaw.com

    *and*

Robert B. Bieck, Jr. (*Pro Hac Vice* Pending)
Alexander N. Breckinridge, V (*Pro Hac Vice*
  Pending)
JONES WALKER LLP
201 St. Charles Avenue, Suite 4900
New Orleans, Louisiana  70170
Telephone:  (504) 582-8202
Facsimile:  (504) 589-8202
rbieck@joneswalker.com
abreckinridge@joneswalker.com

Kaytie M. Pickett (*Pro Hac Vice* Pending)
JONES WALKER LLP
190 East Capitol Street, Suite 800 (39201)
Post Office Box 427
Jackson, Mississippi  39205-0427
Telephone:  (601) 949-4900
Telecopy:  (601) 949-4804
kpickett@joneswalker.com

*Attorneys for Proposed Intervenors Oxford
University Bank; Citizens Bank & Trust Company;
Coastal Commerce Bank; Guaranty Bank and Trust
Company; BankFirst Financial Services as
Successor-in-Interest to Newton County Bank; The
First, A National Banking Association; Copiah
Bank, National Association; and PriorityOne Bank*

{N3106353.1}

**CERTIFICATE OF SERVICE**

THE UNDERSIGNED HEREBY CERTIFIES that on this 5th day of October, 2015, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all of those parties receiving notification through the CM/ECF system.


/s/ Peter C. Dee
Peter C. Dee