**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LANSUPPE FEEDER, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee for Soloso CDO 2005-1 Ltd.,<br><br>Defendant,<br><br>and<br><br>SOLOSO CDO 2005-1 LTD.,<br><br>Nominal Defendant.<br><br>and<br><br>OXFORD UNIVERSITY BANK; CITIZENS BANK & TRUST COMPANY; COASTAL COMMERCE BANK; GUARANTY BANK AND TRUST COMPANY; BANKFIRST FINANCIAL SERVICES as Successor-in-Interest to Newton County Bank; THE FIRST, A NATIONAL BANKING ASSOCIATION; COPIAH BANK, NATIONAL ASSOCIATION; and PRIORITYONE BANK<br><br>Interested Third-Parties | Case No. 1:15-cv-07034 (LTS) (KNF) |

**INTERVENING DEFENDANTS' RULE 56.1(a) STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED**

Pursuant to Local Civil Rule 56.1(a) of this Court, Intervening Defendants, Oxford University Bank; Citizens Bank & Trust Company; Coastal Commerce Bank; Guaranty Bank and Trust Company; BankFirst Financial Services as Successor-in-Interest to Newton County Bank; The First, A National Banking Association; Copiah Bank, National Association; and PriorityOne Bank (the "Intervenors"), respectfully submits this Statement of Material Facts As to

Which There is No Genuine Issue To Be Tried in support of their Cross-Motion for Summary Judgment:

1.    In 2006 and 2007, Coastal Commerce Bank purchased Soloso CDO 2005-1 Ltd. Class A-3L Notes ("Notes") for approximately $1.7 million.  Declaration of Mark Folse, ¶ 4.

2.    In 2005, Oxford University Bank purchased Soloso CDO 2005-1 Ltd. Class A-3B Notes for approximately $350,000.  Declaration of David Guyton, ¶ 4.

3.    In 2005, Citizens Bank & Trust Company purchased Soloso CDO 2005-1 Ltd. A-3L Notes for approximately $1 million.  Declaration of Frank Sibley, ¶ 4.

4.    In 2006 and 2007, Guaranty Bank and Trust Company purchased Soloso CDO 2005-1 Ltd. Class A-3L Notes for approximately $1.7 million.  Declaration of Jake Bellipanni, ¶ 4.

5.    In 2005, Newton County Bank purchased Soloso CDO 2005-1 Ltd. Class A-3B and A-3L Notes for approximately $500,000.  Declaration of William L. Freeman, Jr, ¶ 4. BankFirst Financial Services is the successor in interest to Newton County Bank. Declaration of William L. Freeman, Jr, ¶ 2.

6.    In 2005, The First, A National Banking Association purchased Soloso CDO 2005-1 Ltd. Class A-3L Notes for approximately $250,000.  Declaration of Donna Lowery, ¶ 4.

7.    In 2005, Copiah Bank, National Association purchased Soloso CDO 2005-1 Ltd. Class A-3B and A-3L Notes for approximately $250,000.  Declaration of George Marx, ¶ 4.

8.    In 2005, PriorityOne Bank purchased Soloso CDO 2005-1 Ltd. Class A-3B Notes for approximately $700,000.  Declaration of Robert Barnes, ¶ 4.

9. The Soloso CDO 2005-1 Notes were issued by Nominal Defendant Soloso CDO 2005-Ltd. (the "Issuer"). Docket 8-1, Declaration of Representative of Lansuppe Feeder, LLC, Exhibit A, Indenture.

10. Soloso CDO 2005-1 Ltd. (the "Issuer) is not a registered investment company and sold these unregistered securities under an exemption provided for in the Investment Company Act of 1940 (the "ICA"). To qualify for that exemption, the Issuer could only sell notes to "Qualified Purchasers," as defined under the Indenture and the ICA. If the Issuer sold notes to non-Qualified Purchasers, they must register as an investment company. Docket 8-1, Declaration of Representative of Lansuppe Feeder, LLC, Exhibit "A," Indenture.

11. The Notes are governed by the Soloso CDO 2005-1 Indenture. Docket 8-1, Declaration of Representative of Lansuppe Feeder, LLC, Exhibit "A," Indenture.

12. Under Section 5.1(e) of the Indenture, it is an Event of Default if the Co-Issuers or the Trust Estate is required to register as an "investment company" under the Investment Company Act of 1940, 15 U.S.C. § 80a-1, *et seq*. Under Section 5.4, 100% of all Noteholders must approve liquidation in the case of an Event of Default under Section 5.1(e). Docket 8-1, Declaration of Representative of Lansuppe Feeder, LLC, Exhibit "A," Indenture.

13. Bank of Morton, Bank of Kilmichael, Commercial Bank (Dekalb), Desoto County Bank (now known as First Commercial Bank), First State Bank, and Holmes County Bank and Trust Company (the "Non-Qualified Purchasers") were all Non-Qualified Purchasers at the time they purchased the Soloso CDO 2005-1 Notes, meaning those banks at the time of the purchase of the notes were companies with less than $25 million in investments. Declaration of Sam McClatchy, ¶¶ 4, 6; Declaration of Holt Smith, ¶¶ 4, 6; Declaration of Tito Echiburu, ¶¶ 4, 6;

Declaration of Michael Dudley, ¶¶ 4, 6; Declaration of Alan H. Walters, ¶¶ 4, 6.; Declaration of Buddy Mortimer, ¶ 4, 6.

14. Neither the Intervenors or the Non-Qualified Purchasers were provided the Indenture or other documents related to the Soloso 2005-1 CDP upon purchase of the Notes, nor were they required to certify that they qualified as purchasers under the Indenture and ICA. Declaration of Sam McClatchy, ¶ 5; Declaration of Holt Smith, ¶ 5; Declaration of Tito Echiburu, ¶ 5; Declaration of Michael Dudley, ¶ 5; Declaration of Alan H. Walters, ¶ 5; Declaration of Buddy Mortimer, ¶ 5; Declaration of William L. Freeman, ¶ 5; Declaration of Jake Bellipanni, ¶ 5;; Declaration of Donna Lowery, ¶ 5; Declaration of George Marx, ¶ 5; Declaration of Robert Barnes, ¶ 5; Declaration of David Guyton, ¶ 5; Declaration of Mark Folse, ¶ 5; Declaration of Frank Sibley, ¶ 5.

15. Section 5.1(a) of the Indenture provides, "a default in the payment of the Periodic Interest Amount due on [the] Class A-1 Notes." Upon that type of default, the Indenture provides that a vote of only "66-2/3" of the holders of the "Aggregate Principal Amount of the Outstanding Class A-1 Notes," a class of Noteholders that does not include the Intervening Banks, is needed to liquidate the trust. Docket 8-1, Declaration of Representative of Lansuppe Feeder, LLC, Exhibit "A," Indenture; *see also* Declaration of William L. Freeman, ¶ 4; Declaration of Jake Bellipanni, ¶ 4; Declaration of Donna Lowery, ¶ 4; Declaration of George Marx, ¶ 4; Declaration of Robert Barnes, ¶ 4; Declaration of David Guyton, ¶ 4; Declaration of Mark Folse, ¶4; Declaration of Frank Sibley, ¶ 4.

16. On June 7, 2013, Wells Fargo posted a notice on their website that a payment default had occurred under Section 5.1(a)(iii)(A) of the Indenture and that the Aggregate Principal Amount of the Notes was immediately due and payable under Section 5.2(a) of the

Indenture.  Docket 8-3, Declaration of Representative of Lansuppe Feeder, LLC, Exhibit "C," Indenture.

17. The Intervening Banks did not receive a copy of this notice until early December 2014, when an investment advisor to the Intervening Banks located the notice on Wells Fargo's website and notified the Intervening Banks of the Event of Default.  At that time, Wells Fargo had not given notice that it was liquidating the Trust Estate.  Declaration of Frank W. Smith, III, ¶ 5.

18. On liquidation, under Sections 11.1(b) and (d) of the Indenture, the senior Noteholders are entitled to be paid in full the Cumulative Interest Amount and the Aggregate Principal Amount before junior Noteholders (including the Intervening Banks) become entitled to any proceeds of the liquidation.   Docket 8-1, Declaration of Representative of Lansuppe Feeder, LLC, Exhibit "A," Indenture.

20. As a result of these developments, in December 2014, the Intervening Banks agreed to coordinate requesting certain information, and on December 9, 2014, Coastal Commerce Bank wrote to Wells Fargo, as Trustee, requesting a list of all other Noteholders, as well as the Memorandum of Association of the Issuer, the Articles of Association of the Issuer, the resolutions of the director for the Issuer authorizing the issuance of the Notes, including but not limited to the Class A Notes, so that the Intervening Banks might gain information to help them protect their interests as junior tranche Noteholders.  Declaration of Mark Folse, ¶ 10, Exhibit "A."

21. The letter noted that Section 2.5 of the Indenture, which provides that "[s]o long as an Event of Default shall be continuing, the Note Register shall promptly, upon the written

request of a Noteholder … furnish such Noteholder … with a list of all other Noteholders," entitled the Intervening Banks to this information.  Declaration of Mark Folse, ¶ 10, Exhibit "A."

22. On December 17, 2014, Wells Fargo responded that Cede & Co. was the record Noteholder for every Note and provided no other information.  Declaration of Mark Folse, ¶ 11, Exhibit "B."

23. On December 22, 2014, Coastal Commerce Bank again asked for a list of Noteholders and stated that the list should include the identities of the beneficial holders of the Notes.  Coastal Commerce Bank never received a list of the beneficial holders of the Notes.  Declaration of Mark Folse, ¶ 12, Exhibit "C."

24. On January 16, 2015, Coastal Commerce Bank and Oxford University Bank, as well as the other the Intervening Banks, notified the Trustee that they had become aware that Notes were sold in 2005 to certain banks, including without limitation to Bank of Morton, that were not Qualified Purchasers as defined in the Indenture and in 15 U.S.C. § 80a-2(51)(A), thus requiring either of the Co-Issuers or the Trust Estate to register as an "investment company" under the Investment Company Act of 1940, an Event of Default under the Indenture.  Declaration of Mark Folse, ¶ 15, Exhibit "D."

25. In that same January 16, 2015 correspondence, Coastal Commerce Bank and Oxford University Bank asserted that pursuant to clause (y) under Section 5.4(a) of the Indenture, the Trustee is not permitted to liquidate the Trust Estate without a 100% vote of all Noteholders, including the Intervening Banks.  The Intervenors also requested that the Trustee give notice to all Noteholders of the Event of Default under Section 5.1(e).  Declaration of Mark Folse, ¶ 10, Exhibit "D."

26. Coastal Commerce Bank received a response from Wells Fargo on February 20, 2015, taking the position that it was not apparent that a Section 5.1(e) Event of Default had occurred. It also asserted that it was "considering whether remedial action may be appropriate." Declaration of Mark Folse, ¶ 16, Exhibit "E."

27. On March 19, 2015, the Intervenors responded to Wells Fargo's February 20, 2015 correspondence. The Intervenors reasserted that an antecedent Event of Default had occurred in 2005 when Bank of Morton purchased Notes and the issuers failed to register, and thus a 100% Noteholder vote was required for liquidation, and that all Noteholders were entitled to notice of this Event of Default. The Intervenors also reiterated their request for a list of all beneficial owners of the Notes. Wells Fargo has never provided the Intervening Banks with a list of beneficial owners of the Notes and has not given notice to all Noteholders of the Event of Default under Section 5.1(e). Declaration of Mark Folse, ¶ 17, Exhibit "F."

28. On July 31, 2015, the Issuer wrote to Bank of Morton asserting that the purchase by Bank of Morton was in violation of the representations and certifications made or deemed made in connection with the purchase of the Notes. The July 31 letter further asserted that the purchase was void *ab initio* under Section 2.5(g) of the Indenture. Even though the Co-Issuer took the position that the transfer was void, it directed Bank of Morton to transfer its Notes to a Holder which is a Qualified Purchaser within 30 days pursuant to Section 2.5(k) of the Indenture. Declaration of Tito Echiburu, ¶ 7, Exhibit "A."

29. On August 7, 2015, counsel for Bank of Morton responded to the Co-Issuer stating that it never made any representations and that it was not willing to risk violating state and federal securities law by offering the Notes for sale without providing full disclosure of all material information regarding the Notes. Bank of Morton therefore asked for a list of all

Noteholders known or believed to be Qualified Institutional Buyers and Qualified Purchasers, as well as updated disclosures regarding all material information regarding the Notes, including without limitation, any fair valuation of the Notes and the status and prospect of any potential liquidation of collateral underlying the Notes. Declaration of Tito Echiburu, ¶ 8, Exhibit "B."

30. On August 11, 2015, Wells Fargo posted to its website a Notice of Liquidation Direction and Suspension of Payments, stating that the Requisite Noteholders (defined under the Indenture of 66 2/3% of the senior tranche Noteholders) had directed Wells Fargo as Trustee to liquidate the Trust Estate as a remedy for the Event of Default under Section 5.1(a)(iii)(A). The Notice was not sent to the Intervening Banks and was not accompanied by an Accountant's Certificate, as required by Section 5.4(a) of the Indenture. Docket 8-3, Declaration of Representative of Lansuppe Feeder, LLC, Exhibit "D."

31. On August 21, 2015, the Intervenors, among others, filed an action (the "Mississippi Action") against the Trustee in the Federal District Court for the Northern District of Mississippi, captioned *Oxford University Bank et al. v. Wells Fargo Bank, National Association, as Trustee for Soloso CDO 2005-1, Ltd*. (Case No. 3:15-cv-00145). (Complaint for Declaratory Judgment and for Injunctive and Other Relief). The Intervenors did not name Lansuppe as a party to that action because the Intervenors were unaware of the identity of Lansuppe as a beneficial Noteholder until the filing of this action. Docket 8-1, Declaration of Representative of Lansuppe Feeder, LLC, Exhibit "E."

32. In that action, the Intervenors seek a judgment declaring that: (a) the Soloso CDO 2005-1 was and is required to be registered as an Investment Company under the Investment Company Act; (b) Sections 2.5(g) and 2.5(k) are attempts to create contractual safe harbors from compliance with the ICA prohibited under Section 47 of the ICA and are unenforceable; (c)

Sections 2.5(g) and 2.5(k) of the Indenture do not and cannot remedy the failure to register as an Investment Company; (d) that 100% of Noteholders are required under Section 5.4(a) to vote on any liquidation due to the occurrence at inception in 2005 of an Event of Default under Section 5.1(e) of the Indenture, pre-dating the April 24, 2013 Event of Default; and (e) Defendant has not sent written notice to each of the Noteholders of any proposed sale or liquidation of the Trust Estate, together with a brief description thereof accompanied by an Accountant's Certificate as required by Section 5.4(a) of the Indenture, and that such notice is a condition precedent to any liquidation.  Docket 8-1, Declaration of Representative of Lansuppe Feeder, LLC, Exhibit "E."

33.     After filing that complaint, counsel for the Intervenors was informed by counsel for the Trustee that the Trustee was unaware of the identities of the beneficial noteholders and stating that the Trustee only knew the identity of the record noteholder, Cede & Co., an affiliate of the Depository Trust Corporation.  Because of those discussions and the Trustee's December 17, 2014 letter, the Intervenors understand that the Trustee maintains that a Noteholder for purposes of the Indenture is defined as the record noteholder, Cede & Co., not the holders of beneficial interests in the notes, such as Lansuppe and the Intervenors.  Declaration of Alexander N. Breckinridge ¶ 2.

34.     Unbeknownst to the Intervenors, on September 7, 2015, Lansuppe notified the Trustee that it was exercising its rights under the Indenture to waive the section 5.1(e) Event of Default.  The Intervenors learned of this waiver when counsel for the Trustee informed counsel for the Intervenors of the filing of this lawsuit.  Declaration of Alexander N. Breckinridge ¶ 3.

Dated:    October 5, 2015
          New York, New York

Respectfully submitted,

/s/ Peter C. Dee
Peter C. Dee
Gregori D. Mavronicolas
MAVRONICOLAS & DEE LLP
415 Madison Avenue, 18th Floor
New York, New York  10017
Telephone:  (646) 770-1256
Facsimile:  (866) 774.9005
pdee@mavrolaw.com
gmavronicolas@mavrolaw.com

  *and*

Robert B. Bieck, Jr. (*Pro Hac Vi*ce Pending)
Alexander N. Breckinridge, V (*Pro Hac Vice* Pending)
JONES WALKER LLP
201 St. Charles Avenue, Suite 4900
New Orleans, Louisiana  70170
Telephone:  (504) 582-8202
Facsimile:  (504) 58-8202
rbieck@joneswalker.com
abreckinridge@joneswalker.com

Kaytie M. Pickett (*Pro Hac Vice* Pending)
JONES WALKER LLP
190 East Capitol Street, Suite 800 (39201)
Post Office Box 427
Jackson, Mississippi  39205-0427
Telephone:  (601) 949-4900
Telecopy:  (601) 949-4804
kpickett@joneswalker.com

*Attorneys for Proposed Intervenors Oxford University Bank; Citizens Bank & Trust Company; Coastal Commerce Bank; Guaranty Bank and Trust Company; BankFirst Financial Services as Successor-in-Interest to Newton County Bank; The First, A National Banking Association; Copiah Bank, National Association; and PriorityOne Bank*

**CERTIFICATE OF SERVICE**

THE UNDERSIGNED HEREBY CERTIFIES that on this 5th day of October, 2015, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all of those parties receiving notification through the CM/ECF system.

/s/ Peter C. Dee
Peter C. Dee