UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LANSUPPE FEEDER, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee for Soloso CDO 2005-1 Ltd.,<br><br>    Defendant,<br><br>and<br><br>SOLOSO CDO 2005-1 LTD.,<br><br>    Nominal Defendant. | Case No. 1:15-cv-07034 (LTS) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LANSUPPE'S MOTION FOR SUMMARY JUDGMENT MADE BY ORDER TO SHOW CAUSE**

                       Jonathan E. Pickhardt
                       Andrew S. Corkhill
                       Blair A. Adams
                       QUINN EMANUEL URQUHART &
                       SULLIVAN, LLP
                       51 Madison Avenue, 22nd Floor
                       New York, New York 10010
                       (212) 849-7000

                       *Attorneys for Plaintiff*
                       *Lansuppe Feeder, LLC*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I.     THE INTERVENORS' REQUEST FOR A STAY SHOULD BE REJECTED ................ 2

     A.   The First-Filed Rule Does Not Apply Because the
Mississippi Action Lacks a Necessary Party ........................................................... 2

     B.   Even If the First-Filed Rule Applied, the Balance of
Convenience Favors New York ................................................................................ 3

II.    ANY CHALLENGE TO LANSUPPE'S STANDING HAS BEEN WAIVED ................. 5

III.   THE MATERIAL FACTS UNDERPINNING LANSUPPE'S MOTION FOR
SUMMARY JUDGMENT HAVE NOT BEEN CHALLENGED ..................................... 6

IV.    THE INTERVENORS' ICA ARGUMENTS ARE A RED HERRING ........................... 6

CONCLUSION ............................................................................................................................. 10

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*AEI Life, LLC v. Lincoln Benefit Life Co.*,
 305 F.R.D. 37 (E.D.N.Y. 2015) ..................................................................................................4

*Allan Applestein TTEE FBO D.C.A. Grantor Trust v. Province of Buenos Aires*,
 415 F.3d 242 (2d Cir. 2005)........................................................................................................5

*Azrelyant v. B. Manischewitz Co.*,
 No. 98-CV-2502 ILG, 2000 WL 264345 (E.D.N.Y. Jan. 13, 2000) ......................................5 n.6

*Bellikoff v. Eaton Vance Corp.*,
 481 F.3d 110 (2d Cir. 2007)........................................................................................................8

*Bloomfield v. Bloomfield*,
 97 N.Y.2d 188 (2001) .............................................................................................................6 n.9

*Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc.*,
 522 F.3d 271 (2d Cir. 2008)........................................................................................................3

*Hanson v. Denckla*,
 357 U.S. 235 (1958)....................................................................................................................4

*In re Trusteeship Created by Am. Home Mortg. Inv. Trust 2005-2 ("AHMIT")*
 2014 WL 3858506 (S.D.N.Y. July 24, 2014) .............................................................................5

*N.L.R.B. v. Local 32B-32J Service Employees International Union*,
 353 F.3d 197 (2d Cir. 2003)...................................................................................................6 n.9

*NML Capital, Ltd. v. Rep. of Arg.*,
 2009 WL 1528535 (S.D.N.Y. May 29, 2009) ............................................................................7

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
 599 F.3d 102 (2d Cir. 2010)........................................................................................................4

*Olmsted v. Pruco Life Ins. Co. of N.J.*,
 283 F.3d 429 (2d Cir. 2002)........................................................................................................8

*Regions Bank v. Wieder & Mastroianni, P.C.*,
 170 F. Supp. 2d 436 (S.D.N.Y. 2001).....................................................................................3 n.2

*Roll v. Tracor, Inc.*,
 26 F. Supp. 2d 482 (W.D.N.Y. 1998)......................................................................................5 n.6

*Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*,
 677 F.3d 178 (3d Cir. 2012)........................................................................................................9

*Smith v. Franklin/Templeton Distributors, Inc.*,
 2010 WL 2348644 (N.D. Cal. Jun. 8, 2010)...............................................................................9

*Smith v. Oppenheimer Funds Distrib., Inc.*,
   824 F. Supp. 2d 511 (S.D.N.Y. 2011) .......................................................................................9

*Sotheby's, Inc. v. Garcia*,
   802 F. Supp. 1058 (S.D.N.Y. 1992) ..........................................................................................3

*Stegall v. Ladner*,
   394 F. Supp. 2d 358 (D. Mass. 2005) ......................................................................................9

*Steinberg v. Sherman*,
   2008 WL 2156726 (S.D.N.Y. May 8, 2008) .........................................................................10

*Wiener v. Eaton Vance Distribs., Inc.*,
   2011 WL 1233131 (D. Mass Mar. 30, 2011) ..................................................................9 n.11

## **Statutes**

15 U.S.C. § 80a-46(b) ..................................................................................................................9, 10

Plaintiff Lansuppe Feeder, LLC ("Lansuppe") respectfully submits this reply memorandum of law in further support of its Motion for Summary Judgment made by Order to Show Cause, dated September 11, 2015, in the above-captioned action against Nominal Defendant Soloso CDO 2005-1 Ltd. ("Soloso," the "Soloso CDO," or the "Issuer") and Defendant Wells Fargo Bank, National Association ("Wells Fargo" or the "Trustee").

## PRELIMINARY STATEMENT

In its opening brief, Lansuppe explained why it is entitled to summary judgment under the plain terms of the Indenture.[1] Specifically, Lansuppe demonstrated that the Indenture unambiguously permits it to direct the Trustee to liquidate the Trust Estate following an acceleration resulting from a Failure to Pay Event of Default, notwithstanding the alleged occurrence of a prior Event of Default. The Intervenors do not challenge the plain meaning of the relevant Indenture provisions or the material facts that underpin Lansuppe's motion (nor could they), and their arguments in opposition to summary judgment should be seen for what they are—a desperate attempt by the Intervenors to avoid losses they have already sustained on risky, heavily subordinated CDO notes by improperly shifting those losses to senior noteholders.

The Intervenors' primary argument—that this action should be stayed in favor of the Mississippi Action—fails as a threshold matter because the first-filed rule does not apply where the prior action lacks a necessary party (in this case, the Issuer, whom the Intervenors are trying to force to register under the Investment Company Act of 1940 (the "ICA")). And even if the first-filed rule applied (which it does not), the balance of convenience nevertheless favors proceeding in New York.

---

[1] Capitalized terms used but not defined herein shall have the meaning set forth in either Lansuppe's Memorandum of Law in Support of Motion for Summary Judgment Made by Order to Show Cause ("Br.") or the Indenture.

The Intervenors' claim that Lansuppe lacks standing to sue under the Indenture because it is not a registered Noteholder is equally meritless.  The Intervenors, who by their own admission are also beneficial Noteholders, have no authority to challenge Lansuppe's standing under the Indenture, and this issue has not been raised by either the Trustee or the Issuer.  Accordingly, any potential challenge to Lansuppe's standing has been waived.

The Intervenors' final argument—that summary judgment must be denied because permitting liquidation of the Trust Estate would violate the ICA—also fails.  As a threshold matter, liquidating the Trust Estate would neither violate the ICA nor waive a violation of the ICA, and the Intervenors' *ipse dixit* assertions to the contrary are unpersuasive.  If the Intervenors mean to argue that liquidation *effectively* waives a violation of the ICA because it would frustrate their right to rescission, their argument nevertheless fails, because they have no private right of action under the ICA, and even if they did, their rescission claim would lie against the parties that sold them the Notes, not the Issuer (or the Trust Estate).  Finally, even assuming the Intervenors had a claim against the Issuer, it would not be available here, because the remedy they seek is manifestly inequitable (and therefore expressly prohibited under the ICA).  There is simply no equitable (or logical) justification for bailing out the Intervenors—who knowingly purchased risky, highly subordinated securities—and foisting their losses onto senior noteholders, merely because other junior investors now claim to be "Non-Qualified Purchasers."

## **ARGUMENT**

I. **THE INTERVENORS' REQUEST FOR A STAY SHOULD BE REJECTED**

    A. **The First-Filed Rule Does Not Apply Because the Mississippi Action Lacks a Necessary Party**

Although strict identity of parties is not necessarily required for the first-filed rule to apply, this Court has declined to apply the rule where the prior action lacks a necessary party and

that party is not amenable to suit in the first-filed jurisdiction, because in such a situation, "it is only in the [second-filed] action that the competing claims . . . can be resolved and effective relief granted." *See, e.g.*, *Sotheby's, Inc. v. Garcia*, 802 F. Supp. 1058, 1065 (S.D.N.Y. 1992) (declining to stay interpleader action because one of the claimants to the impleaded assets was not a party to the first-filed action, and was not amenable to suit in the first-filed jurisdiction).[2]

This factor is dispositive here.  There can be no dispute that the Issuer is a necessary party to these proceedings, because the Intervenors are seeking affirmative relief against the Issuer in both the Mississippi Action and this action, in the form of an order requiring the Issuer to register as an Investment Company under the ICA.  *See* Mississippi Action Compl. (ECF No. 8 Ex. E) ¶ 46(a); Answer and Cross-Claim (ECF No. 56-2) Prayer for Relief ¶ B, at 19.  However, the Issuer is not a party to the Mississippi Action, and—as a foreign corporation that has submitted to jurisdiction only in New York (*see* Indenture (ECF No. 8 Ex. A) § 13.10(b))—is not amenable to suit in Mississippi.[3]  For this reason alone, the Court should decline to apply the first-filed rule in this case.

### B.    Even If the First-Filed Rule Applied, the Balance of Convenience Favors New York

Even if the first-filed rule applied (which it does not), the balance of convenience nevertheless weighs in favor of proceeding in this jurisdiction.  *See Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (noting that "the first-filed rule is only a 'presumption' that may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action," based on factors considered in connection with motions to transfer venue).

---

[2] The cases that the Intervenors cite to support the proposition that complete party identity is not necessary to apply the first-filed rule did not involve absent necessary parties. *See, e.g.*, *Regions Bank v. Wieder & Mastroianni, P.C.*, 170 F. Supp. 2d 436, 441 (S.D.N.Y. 2001) (absent party not necessary because dispute with absent party could be addressed in separate action).

[3] This renders the Mississippi Action subject to dismissal for failure to join a necessary party.

As an initial matter, the Indenture—the interpretation and application of which is central to both actions—was negotiated, drafted, and executed in New York (Pickhardt Decl. Ex. 1 (Offering Circular), at Contacts Page (showing New York offices for legal advisors of Co-Issuers and Initial Purchasers)), is governed by New York law (Indenture (ECF No. 8 Ex. A) § 13.10(a)), and includes a New York forum selection clause (*Id.* § 13.10(b)). Faced with these same facts, the Second Circuit has previously held that "the locus of operative facts as well as the interests of efficiency and fairness favor a New York forum." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113 (2d Cir. 2010) (affirming district court's decision not to apply first-filed rule).

In addition to being the more convenient forum, the New York action has also progressed much further than the Mississippi Action, where nothing has occurred since the Intervenors filed their complaint. *See AEI Life, LLC v. Lincoln Benefit Life Co.*, 305 F.R.D. 37, 45 (E.D.N.Y. 2015) ("Courts reject the first-to-file rule when the second filed action has developed further than the initial suit.").

The Intervenors do not dispute that the balance of convenience favors New York.[4] Rather, they argue that this action must be stayed because this Court lacks personal jurisdiction over them. (Opp.[5] at 13.) The Intervenors fail to recognize, however, that a court's ability to hear a trust instruction proceeding arises from its in rem jurisdiction over the trust itself, rather than its jurisdiction over the parties holding an interest in the trust. *See Hanson v. Denckla*, 357 U.S. 235, 246-47 (1958) (stating that a court's in rem jurisdiction over trust assets was based on

---

[4] Nor could they, given that the only links to the Northern District of Mississippi cited in the Mississippi Action are the fact that the Trustee has an office there and that one plaintiff "mailed . . . requests" to the Trustee from Mississippi. *See* Mississippi Action Compl. (ECF No. 8 Ex. E) ¶ 2.

[5] "Opp." is used herein to refer to the Intervenors' Memorandum in Opposition to Lansuppe Feeder LLC's Motion for Summary Judgment and in Support of Intervenors' Cross Motion for Summary Judgment (ECF No. 37).

"the presence of the subject property within the territorial jurisdiction of the forum State"); *In re Trusteeship Created by Am. Home Mortg. Inv. Trust 2005-2* ("*AHMIT*"), 2014 WL 3858506, at *12 (S.D.N.Y. July 24, 2014) ("By giving notice to the affected parties, the trustee can ensure that all affected parties receive authoritative and binding judicial instruction."). As the only court with personal jurisdiction over the Trust Estate, and the only court that can issue a binding judgment on the Trust Estate—*see* Indenture (ECF No. 8 Ex. A) §§ 6.15(b), 13.10(b) (submitting the Trust Estate to this Court's jurisdiction)—this Court is the appropriate forum for this dispute, and the Intervenors' request to stay this action should be denied.[6]

## II. ANY CHALLENGE TO LANSUPPE'S STANDING HAS BEEN WAIVED

There can be no dispute that Lansuppe—a beneficial noteholder who bears the risk of significant losses due to the delayed liquidation of the Trust Estate—has standing under Article III, Section 2 of the U.S. Constitution, and the Intervenors do not suggest otherwise. Rather, the Intervenors argue that Lansuppe lacks standing to sue under the Indenture, because it is not the registered holder of the Notes. (Opp. 16-17.) However, issues of contractual standing—or the alleged lack thereof—are "threshold defenses" that are waived unless they are "raised and disposed of at the outset of the suit." *Allan Applestein TTEE FBO D.C.A. Grantor Trust v. Province of Buenos Aires*, 415 F.3d 242, 245 (2d Cir. 2005) (quoting 5A CHARLES A. WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1295 (3d ed. 2004)). Neither the Trustee nor the Issuer have challenged Lansuppe's standing under the Indenture, and the only way the Intervenors would have standing to challenge Lansuppe's standing is as beneficial

---

[6] In any event, the Intervenors have consented to personal jurisdiction by asserting cross-claims and moving for summary judgment on those cross-claims. *See Roll v. Tracor, Inc.*, 26 F. Supp. 2d 482, 485 (W.D.N.Y. 1998) ("The defense of personal jurisdiction was waived when defendants filed their 'first' motion for summary judgment . . . ."); *Azrelyant v. B. Manischewitz Co.*, No. 98-CV-2502 ILG, 2000 WL 264345, at *5 (E.D.N.Y. Jan. 13, 2000) (ruling that the defendant waived personal jurisdiction by appearing before the court multiple times and "moving for summary judgment").

noteholders themselves (Opp. 2 n.1), which would render the basis for their challenge meritless.[7] Thus, any potential challenge to Lansuppe's standing under the Indenture has been waived.

### III. THE MATERIAL FACTS UNDERPINNING LANSUPPE'S MOTION FOR SUMMARY JUDGMENT HAVE NOT BEEN CHALLENGED

The Intervenors do not challenge the plain meaning of the relevant Indenture provisions or the material facts that underpin Lansuppe's motion. Specifically, the Intervenors do not dispute that: (1) Lansuppe constitutes the Requisite Noteholders;[8] (2) acceleration of the Notes in June 2013 triggered the Requisite Noteholders' right to direct the liquidation of the Trust Estate; and (3) because a Failure to Pay Event of Default gave rise to the acceleration, the Trustee needed to receive a direction from the Requisite Noteholders *only*, as opposed to 100% of the Noteholders, in order to carry out the liquidation. As explained in Lansuppe's opening brief, Lansuppe is entitled to summary judgment based on these undisputed facts. (Br. 8-12.)

### IV. THE INTERVENORS' ICA ARGUMENTS ARE A RED HERRING

The Intervenors argue that "[r]egardless of whether Lansuppe's interpretation of the Indenture is correct," summary judgment must be denied because liquidation will "in effect be permitting a waiver of the Issuer's violation of the ICA." (Opp. 3.)[9] The Intervenors' argument may be summarized as follows: (1) Soloso Notes were sold to "Non-Qualified Purchasers"; (2) the Issuer was therefore required to register as an Investment Company under the ICA; (3) the

---

[7] Indeed, by seeking to challenge Lansuppe's standing the Intervenors are effectively contending that they themselves lack contractual standing to bring the claims they have previously filed in the Mississippi Action.

[8] As noted above, *see* Section II *supra* at 5-6, although the Intervenors have sought to challenge Lansuppe's status as a registered Noteholder— and therefore as a Requisite Noteholder (Opp. 16-17)—such a challenge could only be raised by the Trustee or the Issuer, neither of whom have done so.

[9] In light of their failure to challenge Lansuppe's interpretation of the Indenture, the Intervenors' citations to *N.L.R.B. v. Local 32B-32J Service Employees International Union*, 353 F.3d 197 (2d Cir. 2003) and *Bloomfield v. Bloomfield*, 97 N.Y.2d 188 (2001) are inapposite. As the Intervenors' own parenthetical explanations make clear (Opp. 17), those cases concern the interpretation of ambiguous contracts, and there is nothing ambiguous about the Indenture.

Issuer has failed to do so, in violation of the ICA; and (4) liquidating the Trust Estate would amount to a waiver of that violation. (Opp. 17-20.)

Lansuppe disputes propositions (1), (2), and (3), and will address those issues in response to the Intervenors' Cross-Motion for Summary Judgment, to the extent it becomes necessary to do so. However, even accepting propositions (1), (2), and (3) for purposes of this motion, the Intervenors' argument nevertheless fails, because proposition (4) fundamentally misconstrues the relief sought by Lansuppe, which will have no impact whatsoever on the Issuer's obligations under the ICA. Lansuppe's direction to the Trustee to liquidate the Trust Estate in no way waives any obligations that the Issuer has under the ICA, nor does it bar enforcement of those obligations by anyone authorized to do so. Thus, the Intervenors' *ipse dixit* assertion that the liquidation would "in effect be permitting a waiver of the Issuer's violation of the ICA" is simply false.[10]

Although not expressly raised in their opposition brief—and therefore waived, *see NML Capital, Ltd. v. Rep. of Arg.*, 2009 WL 1528535, at *1 (S.D.N.Y. May 29, 2009) (arguments not raised in opposition to motion for summary judgment waived)—the Intervenors may be intending to argue that, although liquidation of the Trust Estate does not *actually* waive a violation of the ICA, it *effectively* does so, because it prevents the Intervenors from obtaining a remedy for that violation. The Intervenors appear to be seeking two such remedies: (1) a declaration that the Issuer "must register as an Investment Company pursuant to the [ICA]"; and (2) an order granting the Intervenors "rescission of their purchase of [Soloso] notes" pursuant to

---

[10] The same is true of the Intervenors' conclusory assertion that Lansuppe's waiver of the Alleged 2005 Event of Default under Section 5.15 of the Indenture amounts to a waiver of the Issuer's alleged violation of the ICA. (Opp. 19-20.) The waiver of the Alleged 2005 Event of Default and its consequences under the Indenture has absolutely no impact upon the obligations of the Issuer under the ICA or the consequences of any failure by the Issuer to comply with ICA.

Section 47(b) of the ICA. (Proposed Order (ECF No. 36-2), at 2.) As a matter of law, the Intervenors have no right to either remedy. Accordingly, liquidation of the Trust Estate will have no impact upon their rights.

**The Intervenors have no right to a declaration that the Issuer must register as an Investment Company.** The Intervenors request a declaratory judgment that the Issuer is required to register as an Investment Company under Section 8 of the ICA, in order to come into compliance with Section 7 of the ICA (prohibiting sale of securities absent registration). (Opp. 22.) Under the well-settled law of this Circuit, the Intervenors lack a private right of action to assert such a claim. *See Olmsted v. Pruco Life Ins. Co. of N.J.*, 283 F.3d 429, 436 (2d Cir. 2002); *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 117 (2d Cir. 2007). In both cases, the Second Circuit based its determination that there was no private right of action to remedy violations of the ICA on four factors: (1) the lack of an explicit private right of action under the clause at issue; (2) the presence of an explicit private right of action under Section 35(b), suggesting the omission of other private rights of action was intentional; (3) the express provision of enforcement authority to the SEC; and (4) the focus of the clause at issue, and the ICA in general, on the person regulated rather than individuals protected. *See Bellikoff*, 481 F. 3d at 116; *Olmsted*, 283 F. 3d at 433-435. Based on these factors, the Second Circuit concluded that "the text and the structure of the ICA reveal no ambiguity about Congress's intention to preclude private rights of action . . . ." *Bellikoff*, 481 F. 3d at 117.

Applying these four factors, it is clear that there is no private right of action under Section 7 or 8 of the ICA. These provisions (1) contain no explicit private right of action; (2) co-exist in the ICA with provisions providing for an explicit private right of action; (3) are subject

8

to the explicit enforcement authority of the SEC; and (4) focus on the obligations of and restrictions on the regulated entity, rather than the rights of investors.

**The Intervenors have no right to rescission.** Section 47(b) of the ICA—which provides for rescission of contracts that are "made [in], or whose performance involves, a violation" of the ICA (15 U.S.C. § 80a-46(b)(1))—describes a remedy available under the ICA, but does not create a private right of action. It therefore can only be employed by a party whose right to recovery is predicated on a substantive violation of the ICA that creates a private right of action independent of Section 47(b). *See Smith v. Oppenheimer Funds Distrib., Inc.*, 824 F. Supp. 2d 511, 519-520 (S.D.N.Y. 2011) ("*Oppenheimer*") (holding that Section 47(b) of the ICA "contains a remedy, but not a substantive right" and therefore "cannot bestow a private right of action on substantive provisions of the ICA that lack such [private right of] action"); *accord Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 677 F.3d 178, 187 (3d Cir. 2012); *Smith v. Franklin/Templeton Distributors, Inc.*, 2010 WL 2348644, at *7 (N.D. Cal. Jun. 8, 2010) ("*Franklin/Templeton*"); *Stegall v. Ladner*, 394 F. Supp. 2d 358, 378 (D. Mass. 2005).[11] As explained above, there is no private right of action under Sections 7 or 8 of the ICA (the Sections allegedly violated by the Issuer). Accordingly, under *Oppenheimer*, the Intervenors cannot graft a private right of action on to those sections through Section 47(b).

Even assuming a private right of action for rescission existed under Section 47(b) of the ICA (which is does not), it would not entitle the Intervenors to recovery against the Trust Estate,

---

[11] The Intervenors cite *dicta* from a district court decision in the First Circuit for their proposition to the contrary. *See Wiener v. Eaton Vance Distribs., Inc.*, 2011 WL 1233131, at *12 (D. Mass Mar. 30, 2011). Notably, that same decision *rejected* an effort to graft a private right of action on to Section 36(a) of the ICA, which provides for SEC enforcement of fiduciary duty violations, and cited *Franklin/Templeton* with approval. *Id.* The district court in *Oppenheimer* considered and rejected the quoted language cited by the Intervenors from *Weiner*, noting that it relied on a 1977 Seventh Circuit decision that predated modern jurisprudence concerning implied private rights of action. *See Oppenheimer*, 824 F. Supp. 2d at 519 n.3.

because none of the Intervenors purchased their Notes from the Issuer. Rather, the Issuer sold all of its Notes on the Closing Date to the Initial Purchasers, who subsequently sold them to investors such as the Intervenors "in individually negotiated transactions at varying prices to be determined in each case at the time of sale." (Pickhardt Decl. Ex. 1, at 71.) Accordingly, any claim for rescission would lie against the Initial Purchasers—or some other seller in the case of secondary market transactions—not the Issuer (or the Trust Estate). *See Steinberg v. Sherman*, 2008 WL 2156726, at *7 (S.D.N.Y. May 8, 2008) ("A claim for rescission cannot be maintained against a person who was not a party to the contract.").

Finally, even if a private right of action existed and could be properly asserted against the Issuer, it would not be available here, because allowing the Intervenors to recover 100% of their investment from the Trust Estate through rescission would produce a patently inequitable result, directly at odds with the purposes of the ICA. *See* 15 U.S.C. § 80a-46(b) (permitting enforcement of a contract that violates the ICA where "under the circumstances enforcement would produce a more equitable result than nonenforcement and would not be inconsistent with the purposes of [the Act]"). In essence, the Intervenors—all of whom are junior Noteholders and none of whom claim to be Non-Qualified Purchasers—are asking the Court to bail them out of a highly risky and highly leveraged investment that has gone sour, at the direct expense of senior Noteholders who took more conservative positions, because the Intervenors happened (by pure chance) to have invested alongside allegedly Non-Qualified Purchasers. There is no equitable (or logical) justification for the judicial recognition of such an extraordinary "get-out-of-jail-free" card, which would turn the financial markets entirely on their head.

## **CONCLUSION**

For the foregoing reasons, Lansuppe respectfully submits that its Motion for Summary Judgment made by Order to Show Cause should be granted.

DATED:   New York, New York        Respectfully submitted,
         October 13, 2015

                                   QUINN EMANUEL URQUHART &
                                   SULLIVAN, LLP


                                   By: _____
                                       Jonathan E. Pickhardt
                                       *jonpickhardt@quinnemanuel.com*
                                       Andrew S. Corkhill
                                       *andrewcorkhill@quinnemanuel.com*
                                       Blair A. Adams
                                       *blairadams@quinnemanuel.com*


                                   51 Madison Avenue, 22nd Floor
                                   New York, New York 10010
                                   (212) 849-7000

                                   *Attorneys for Plaintiff*
                                   *Lansuppe Feeder, LLC*

11