UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

LANSUPPE FEEDER, LLC,

           Plaintiff

       -v-                                  No.  15CV7034-LTS

WELLS FARGO BANK, NA,
*as trustee for Soloso CDO 2005-1 Ltd.*

           Defendant.

     and

SOLOSO CDO 2005-1 LTD.,

           Nominal Defendant,

     and

OXFORD UNIVERSITY BANK; CITIZENS
BANK & TRUST COMPANY; COASTAL
COMMERCE BANK; GUARANTY BANK
AND TRUST COMPANY; BANKFIRST
FINANCIAL SERVICES; THE FIRST, A
NATIONAL BANKING ASSOCIATION;
COPIAH BANK, NATIONAL ASSOCIATION;
& PRIORITYONE BANK,

           Intervenors.

--------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Plaintiff Lansuppe Feeder, LLC, ("Lansuppe" or "Plaintiff") has moved this

Court, by Order to Show Cause, for summary judgment instructing Defendant Wells Fargo

Bank, NA ("Wells Fargo" or the "Trustee") to comply with Lansuppe's direction to liquidate

certain trust assets (the "Trust Estate") owned by Nominal Defendant Soloso CDO 2005-1 Ltd.

("Soloso" or the "Issuer").  (See Docket Entry No. 3.)  On October 5, 2015, Oxford University

Bank, Citizens Bank & Trust Company, Coastal Commerce Bank, Guaranty Bank and Trust

Company, Bankfirst Financial Services, The First - A National Banking Association, Copiah

Bank National Association and PriorityOne Bank (collectively, the "Intervenors") filed a motion

to intervene and to stay or dismiss the action in favor of one pending in Mississippi involving

claims that relate to those asserted here by Lansuppe.  (Docket Entry Nos. 33, 56; see also

Docket No. 15CV145, N.D. Miss.)  The Intervenors also propose to file an Answer that includes

cross-claims, and have filed a cross-motion for summary judgment on claims related to

purported violations of the Investment Company Act of 1940 (the "ICA," 15 U.S.C. §§ 80a-1-

80a-64).  (See Docket Entry No. 36.)  On October 20, 2015, the Court heard oral argument on

Lansuppe's summary judgment motion, as well as on the Intervenors' motions to intervene and

to stay or dismiss this action.[1]  (See Docket Entry No. 85.)  For the reasons stated below, the

Court grants the Intervenors' motion to intervene, denies the Intervenors' motion to stay or

dismiss this action, grants in part Lansuppe's motion for summary judgment, and reserves

decision as to the remaining aspects of the summary judgment motion practice.

---

[1]     The Intervenors' cross-motion for summary judgment is not yet fully briefed.

BACKGROUND[2]

Soloso is a trust that holds assets consisting of collateralized debt obligations. (See Compl. ¶¶ 1, 15.)  The Trust has issued Notes in several tranches, and holders of the different tranches of Notes have varying rights with respect to rates of return on the Notes and repayment of principal in the event of liquidation of the Trust Estate.  (Compl. ¶¶ 15-17, 22.) Lansuppe holds Class A-1 trust Notes, while the Intervenors hold Notes whose rights are junior to those of the Class A-1 Notes.  (Id. ¶ 12, Pl. 56.1 St. ¶ 7.)  This action arises from a dispute concerning the Trustee's duty to comply with a direction from Lansuppe to liquidate and distribute the Trust Estate.

The relevant Notes were issued by Soloso pursuant to the terms of an Indenture, dated August 24, 2005.  (See Pl. 56.1 St. ¶ 1; see also Declaration of a Representative of Lansuppe Feeder, LLC, Docket Entry No. 8, Ex. A (the "Indenture").)  Article V of the Indenture defines "Events of Default" and provides for rights and obligations upon the occurrence of such events.  Section 5.1 of the Indenture provides that an Event of Default occurs when the Issuer "default[s] in the payment of the Periodic Interest Amount due on . . . any Class A-1 Notes" (hereafter the "Failure to Pay Event of Default").  (Indenture § 5.1(a)(iii)(A).) Section 5.1 also provides that an Event of Default occurs if "either of the Co-Issuers or the Trust Estate becomes required to register as an 'investment company' under the Investment Company

---

[2]     Facts recited as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there is no non-conclusory contrary factual proffer.  Citations to the parties' respective Local Civil Rule 56.1 Statements ("Def. 56.1 St." or "Pl. 56.1 St.") incorporate by reference the parties' citations to underlying evidentiary submissions.  Facts drawn from the Complaint in this action (Docket Entry No. 1 ("Compl.")) are uncontested in the Intervenors' Proposed Answer (Docket Entry No. 56-2) and are therefore deemed admitted.

Act" but fails to do so.  (See Indenture § 5.1(e).)

        Events of Default trigger certain rights of the Noteholders, including the right of senior noteholders to accelerate the maturity of the notes.  Section 5.2(a) of the Indenture provides that, "[i]f an Event of Default . . . with respect to the Notes occurs and is continuing, the Trustee . . . shall, at the direction of the Requisite Noteholders, declare the Aggregate Principal Amount of the Notes to be immediately due and payable, by notice in writing to the Issuer."  (See Indenture § 5.2(a).)  The term "Requisite Noteholders" is defined in the Indenture as holders of "at least 66-2/3% of the Aggregate Principal Amount of the Outstanding Class A-1 Notes."  (Indenture § 1.1 at 25.)  Lansuppe is, and has been at all times between July 31, 2015, and the present, the beneficial owner of 66.89% of the outstanding principal balance of the Class A-1 Notes.  (Pl 56.1 St. ¶ 2.)

        It is undisputed that an Event of Default arising from failure to pay interest on the Class A-1 Notes occurred in April 2013 and that Lansuppe exercised its right to accelerate the principal amount of those Notes following the default.  (Id. ¶¶ 4-5.)  The Intervenors assert that, prior to that Event of Default, Soloso ceased to qualify for an exemption from Investment Company Act registration and regulation, by reason of secondary market sales of Notes to at least one entity that was not a Qualified Purchaser within the meaning of the relevant ICA exemption.  (Id. ¶¶ 9-10.)  As a result, according to the Intervenors, an Event of Default occurred, Soloso is required to register as an investment company, and all Noteholders are entitled to rescission of the Indenture, including refunds of their investments.  (Id. ¶ 11; see also Transcript of Order to Show Cause Hearing held October 20, 2015 ("Trans.") at 54:18-56:5.)

        Acceleration of the Notes in turn triggers certain remedial rights of the Trustee and noteholders under the Indenture as against the Issuer, including the right of the Requisite

Noteholders to direct the Trustee to liquidate the Trust Estate.  (See Indenture § 5.4(a)(iv) ("If

the Notes have been declared due and payable and such declaration and its consequences have

not been rescinded or annulled . . . the Trustee . . . shall, upon direction by the Requisite

Noteholders . . . exercise any remedies of a secured party under the UCC including the sale or

liquidation of the Trust Estate.").)[3]  On July 31, 2015, Lansuppe – purportedly constituting the

Requisite Noteholders – directed the Trustee to liquidate the Trust Estate pursuant to Section 5.4

of the Indenture.  (Pl. 56.1 St. ¶ 6.)  On August 11, 2015, the Trustee delivered a notice

informing the noteholders that it intended to liquidate the Trust Estate.  (Id.)

     The Trustee thereafter informed Lansuppe that certain junior noteholders (the

"Disputing Noteholders")[4] had taken the position that the Trustee was not entitled to liquidate

the Trust Estate at the direction of the Requisite Noteholders.  (Id. ¶ **7**.)  These Disputing

Noteholders filed an action in the Northern District of Mississippi, in which they allege that

certain notes issued by Soloso were sold in 2005 to a purchaser, Bank of Morton, that was not a

"Qualified Purchaser" within the meaning of Section 3(c)(7) of the ICA.  (See id. ¶¶ 8-9.)

Lansuppe is not a party to the Mississippi action.  (Id. ¶ 8.)  The Disputing Noteholders have

argued that the Co-Issuers of the Trust Estate were required to register as "investment

companies" under the ICA after notes were sold in 2005 to a non-Qualified Purchaser and that,

---

[3]     The Indenture also provides that, in the case of an Event of Default arising from noncompliance with the ICA, the approval of 100% of the Noteholders is required to trigger a liquidation.  (See Indenture § 5.4(a), part y.)  The Intervenors have argued in their papers that this unanimous approval requirement precludes the Requisite Noteholders from invoking their liquidation rights under the Failure to Pay Event of Default provision (see Indenture § 5.4(a), part x), but Intervenors' counsel conceded at oral argument that there is no basis in the Indenture for any such argument.  (See Trans. 20:10-21:11.)

[4]     The Disputing Noteholders in the Mississippi action largely overlap with the Intervenors in the instant action.

by failing to register, the Co-Issuers defaulted on their obligations pursuant to Section 5.1(e) of the Indenture.  (Pl. 56.1 St. ¶ 10.)  The Disputing Noteholders asserted in the Mississippi action that, as a result of this Event of Default, liquidation of the Trust Estate cannot be ordered without approval from 100% of the Noteholders.  (Id. ¶ 11; Indenture § 5.4(a), part y.)

   In the instant trust instruction proceeding, Lansuppe seeks an order authorizing the Trustee to liquidate and distribute the Trust Estate in accordance with the directions that Lansuppe has delivered.  Lansuppe requested an Order to Show Cause on September 9, 2015, for summary judgment in its favor.  The Court granted the Order to Show Cause on September 11, 2015, and notice of the summary judgment motion was published to potential parties in interest.  (See Docket Entry No. 3.)  On October 5, 2015, the Intervenors filed their motion to intervene and to stay or dismiss this action, as well as their cross-motion for summary judgment on their ICA-related claims.  (Docket Entry Nos. 33, 36, 56.)

   It is undisputed that, if Lansuppe's motion is granted in full and the Trust Estate is liquidated and distributed in accordance with the priority provisions of the Indenture, the assets will be insufficient to fund any distribution to the Intervenors and other junior Noteholders.  (See Def. 56.1 St. ¶ 27.)  It is also undisputed that the trust corpus is currently sufficient to satisfy the Class A-1 Noteholders' claims under the indenture, that the trust assets are liquid and that the market for them is volatile.  (See e.g., Trans. 55:8-56:18.)

DISCUSSION

The Motion to Intervene

   Federal Rule of Civil Procedure 24(a)(2) requires the court to permit, upon timely motion, anyone to intervene who "claims an interest relating to the property or transaction that is

the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  See Fed. R. Civ. P. 24(a)(2).  "'[A]n intervenor must show that: the application [to intervene] is timely; (2) the applicant claims an interest relating to the property or transaction which is the subject matter of the action; (3) the protection of the interest may as a practical matter be impaired by the disposition of the action; and (4) the interest is not adequately protected by an existing party.'"  St. John's University, New York v. Bolton, 450 F. App'x 81, 83 (2d Cir. 2011) (quoting Restor-A-Dent Dental Labs, Inc. v. Certified Alloy Prods., Inc., 725 F.2d 871, 874 (2d Cir. 1984)).

       None of the parties to this action has opposed the Intervenors' motion to intervene.  (See Trans. 6:3-5, 25:5-10, 29:17-20, 36:19-20.)  Furthermore, the Court finds that the Intervenors have, as a matter of law, established each of the four requisites for intervention. The motion was timely made; the Court set a deadline of October 5, 2015, for any such motions (see Docket Entry No. 3), and the Intervenors filed their motion on that date.  (Docket Entry Nos. 33, 56.)  The Intervenors have claimed an interest in the transaction and property at issue, as the Order to Show Cause defined "parties in interest" as including "beneficial holders of Notes issued by Soloso CDO 2005-1 Ltd.," and the Intervenors are all beneficial holders of such Notes.  (See Def. 56.1 St. ¶¶ 1-9.)  Protection of the Intervenors' interests would clearly be impaired by disposition of this action, as a ruling in Lansuppe's favor would bind the Trustee and preclude the relief sought by the Intervenors here and in the Mississippi action.  Finally, it is clear that none of the other current parties to the suit seeks to advance the positions taken by the Intervenors.

       The Court, accordingly, grants the Intervenors' motion to intervene in this action.

The Intervenors' Motion to Stay or Dismiss This Action

        The Intervenors ask that the Court stay or dismiss this action in favor of the Mississippi action pursuant to the first-filed doctrine.  "Under the first-filed doctrine, when competing lawsuits have been filed in different courts relating to the same controversy, ordinarily, the 'first suit should have priority'" over the later-filed suit.  See Oleg Cassini, Inc. v. Serta, Inc., No. 11CV8751-PAE, 2012 WL 844284, at *3 (S.D.N.Y. Mar. 13, 2012) (quoting D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006)).  While this doctrine requires that the claim, parties and available relief in the two actions be similar, the issues need not be identical, and the named parties need not be identical so long as they represent the same interests.  See Oleg Cassini, Inc., 2012 WL 844284, at *3.  The first-filed doctrine has two exceptions: "(1) where 'special circumstances' exist, and (2) where the balance of convenience favors the second-filed action."  See Oleg Cassini, 2012 WL 844284, at *8 (quoting Employers Ins. of Wasau v. Fox Entm't Grp., Inc., 522 F.3d 271 275 (2d Cir. 2008).  The proponent of the second-filed suit bears the burden of proving the existence of conditions establishing either of these exceptions.  (Id.)  Both Lansuppe and the Issuer argue that a special circumstance is present because the Issuer is an indispensable party to the Mississippi action who is not, and cannot be, joined in Mississippi.  Lansuppe and Soloso also argue that the balance of convenience favors litigation of this controversy in the Southern District of New York.  Both positions are well taken.

        In light of the fact that the Mississippi action seeks affirmative relief in the form of a declaration that the Issuer must register as an investment company under the ICA, the Mississippi plaintiffs are seeking a determination of the Issuer's legal obligations and the Issuer is clearly an indispensable party to that action.  The Intervenors have not, however, demonstrated

that the Mississippi court can properly exercise jurisdiction over Soloso.  They do not proffer any argument that Soloso would be subject to personal jurisdiction under any provision of the Mississippi long-arm statute.  <u>See</u> Miss. Code Ann. § 13-3-57.  While they invoke the ICA's nationwide service of process provision, Soloso is a Cayman Islands entity based outside of the United States.  Nor have the Intervenors demonstrated applicability of the Mississippi long-arm statute in this case.

Furthermore, the Intervenors have not demonstrated any proper basis for venue of their ICA claims in Mississippi.  Section 1391 of Title 28 of the U.S. Code provides that an action may be venued in any district where: (1) the defendant resides, if all defendants are residents of the State in which the district is located; (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.  <u>See</u> 28 U.S.C. § 1391.  The ICA also contains a jurisdictional provision which provides that, "[a]ny criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred . . . Any suit or action to enforce any liability or duty created by, or to enjoin any violation of, this title or rules, regulations or orders thereunder, may be brought in any such district or in the district wherein the defendant is an inhabitant or transacts business."  15 U.S.C.S. § 80a-43 (LexisNexis 2015).  The Intervenors have failed to proffer any facts demonstrating that venue of their ICA claims as against Soloso would be proper in Mississippi.  As noted, Soloso is a Cayman Islands entity based outside of the United States, and thus is not a resident or inhabitant of Mississippi.  Furthermore, the Intervenors have failed to proffer facts demonstrating that Soloso or the Co-Issuer took any action "constituting the [requisite ICA] violation" in Mississippi, or that Soloso

or the Co-Issuer transacts business in Mississippi.  Nor have the Intervenors demonstrated that

any substantial part of the events or omissions giving rise to their ICA claims occurred there.[5]

The Intervenors' apparent inability to obtain jurisdiction over Soloso or establish proper venue

of an action against the Issuer in Mississippi is a special circumstance weighing strongly against

deference to the Mississippi forum under the first-filed doctrine.

       The Court further finds that the balance of convenience factors favors litigation of

the action in this jurisdiction.  "The balance of conveniences is determined by considering the

same factors 'considered in connection with motions to transfer venue.'"  Oleg Cassini, Inc.,

2012 WL 844284, at *8 (quoting Employers Ins. of Wausau, 522 F.3d at 275).  These factors

include "the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of

relevant documents and relative ease of access to sources of proof, (4) the convenience of

parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of

unwilling witnesses, [and] (7) the relative means of the parties."  D.H. Blair & Co.,, 462 F.3d at

106-07 (2d Cir. 2006) (internal quotation marks and citation omitted).  Lansuppe has proffered

that the Indenture was negotiated, drafted and executed in New York, is governed by New York

law, and includes a New York forum selection clause.  (See Reply Memorandum of Law in

Further Support of Lansuppe's Motion for Summary Judgment Made by Order to Show Cause

("Lansuppe Reply"), Docket Entry No. 74 at pp. 3-4; see also Indenture §§ 13.10(a), (b); Trans.

8:24-9:8.)  Furthermore, the New York action, in which dispositive motions have been filed and

briefed, has advanced much further than the Mississippi action, where little has occurred thus far

---

[5]     The Intervenors have also failed to controvert the factual proffers made by Soloso that
demonstrate a complete lack of connection with the Mississippi venue.  (See Affidavit
of Andrew Dean in Opposition to the Proposed Intervenors' Motion to Stay ¶¶ 1, 11-
20.)

beyond the filing of a complaint.  Thus, allowing this action to proceed in this district serves

judicial economy and is likely to reduce costs for all parties.  The Court therefore finds that the

"locus of operative facts as well as the interests of efficiency and fairness favor a New York

forum."  New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 113 (2d Cir.

2010).

      While the Intervenors have argued generally that Mississippi is the more

convenient forum due to their relative lack of means, their presence in court for the October 20,

2015, hearing undercuts this argument and, in any event, this factor does not outweigh all of the

other convenience factors, as well as the special circumstances, that favor venue in New York.

The Court therefore declines to apply the first-filed doctrine and denies the Intervenors' motion

to stay or dismiss this case in favor of the Mississippi action.[6]

Lansuppe's Motion for Summary Judgment - Liquidation of the Trust

      Lansuppe seeks authorization for liquidation of the Trust Estate and, ultimately,

distribution of the corpus in accordance with the priorities established under the Indenture.

Having retreated at oral argument from the position that liquidation can only validly be

authorized by the consent of 100% of the Trust's Noteholders (see Trans. 55:15-56:18), the

---

[6]    The Intervenors have also argued that the Mississippi forum is superior to this one because this Court lacks personal jurisdiction over them.  The Court finds that the Intervenors have waived any defect in this Court's personal jurisdiction by asserting affirmative cross-claims in their motion for summary judgment.  (See Docket Entry No. 56.)  In any event, the Court's authority to hear a trust instruction proceeding arises from its in rem jurisdiction over the trust itself, rather than jurisdiction over the parties with an interest in the trust.  See Hanson v. Denckla, 357 U.S. 235, 246-47 (1958) (basis of jurisdiction over trust assets "is the presence of the subject property within the territorial jurisdiction of the forum State.").  The Intervenors have conceded that this Court has the requisite jurisdiction.  (See Trans. 28:24-29:2.)

Intervenors now acknowledge that the rescission remedy sought in their cross-motion would also require liquidation of the Trust Estate. (See id. 54:18-19.)

Because the market value of the Trust Estate is volatile and could slip below the value necessary to provide the Class A-1 Noteholders with full satisfaction of their claims under the Indenture, the Court now grants Lansuppe's summary judgment motion to the extent it seeks an order authorizing the Trustee to proceed with liquidation of the Trust Estate. This measure will facilitate preservation of the value of the Trust Estate pending the completion of briefing of the Intervenors' cross-motion and the Court's determination of the merits of the parties' respective positions.

CONCLUSION

For the foregoing reasons, the Intervenors' motion to intervene is granted, and their motion to stay or dismiss this proceeding is denied. The Intervenors are authorized to file their proposed Answer and Cross-Claims. Cross-Defendants' time to respond to the Cross-Claims is extended pending further order of the Court.

Lansuppe's motion for summary judgment is granted insofar as it seeks an instruction from this Court that the Trustee liquidate the assets of the Trust Estate. The Trustee is hereby authorized and directed to liquidate the assets of the Trust Estate in accordance with the provisions of the Indenture. Such assets are to be held, pending further order of the Court, in a manner designed to preserve their value. The Trustee shall not be held liable to any Noteholder or other third party for any actions taken in compliance with this Memorandum Opinion and Order.

The remaining issues raised in Lansuppe's motion for summary judgment, and the

Intervenors' cross-motion, continue under submission.

This Memorandum Opinion and Order resolves Docket Entry Numbers 33 and

56.

SO ORDERED.

Dated: New York, New York
        October 26, 2015

                                          /s/ Laura Taylor Swain
                                          LAURA TAYLOR SWAIN
                                          United States District Judge